# SUMMONS

**Cozen O'Connor**
Hayes A. Hunt (application for admission
*pro hac vice* to be filed)
Brian Kint (N.J. Bar I.D. 03834-2011)
Joshua Ruby (application for admission *pro hac vice* to be filed)
457 Haddonfield Road, Suite 300
P.O. Box 5459
Cherry Hill, NJ 08002
Telephone: (856) 910-5000
Facsimile: (856) 910-5075
*Attorneys for Plaintiffs, B.P and K.P.*

**Superior Court of New Jersey**

Camden County
Law Division

Docket No.: L-3384-14

B.P. and K.P.,

      Plaintiffs,

    v.

BLACK HORSE PIKE REGIONAL
SCHOOL DISTRICT, RALPH ROSS,
FRANK PALATUCCI, THOMAS
SULLIVAN, ANTHONY WILLIAMS,

      Defendants.

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

for

Clerk of the Superior Court

DATED:  September 9, 2014

Name of Defendant to Be Served:     BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT

Address of Defendant to Be Served:  580 Erial Road
Blackwood, New Jersey

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St.
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court

Civil Case Management Office
Broad & Fayette Sts., P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 263-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068

Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 387-1835
LEGAL SERVICES
(908) 475-2010

CAMDEN COUNTY
SUPERIOR COURT
HALL OF JUSTICE
CAMDEN            NJ 09103

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (856) 379-2200
COURT HOURS  8:30 AM - 4:30 PM

                              DATE:    AUGUST 29, 2014
                              RE:      P VS BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT
                              DOCKET: CAM L -003384 14

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

DISCOVERY IS    450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON LOUIS R. MELONI

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      302
AT: (856) 379-2200 EXT 3080.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                ATTENTION:

                              ATT: BRIAN KINT
                              COZEN OCONNOR
                              457 HADDONFIELD RD STE 300
                              PO BOX 5459
                              CHERRY HILL      NJ 08002

JUBAXTS

**Appendix XII-B1**

## CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA | |
| CHG/CK NO. | 140519 |
| AMOUNT: | $200 |
| OVERPAYMENT: | |
| BATCH NUMBER: | B009 |

| ATTORNEY / PRO SE NAME<br>Brian Kint | TELEPHONE NUMBER<br>(856) 910-5000 | COUNTY OF VENUE<br>Camden |
|---|---|---|
| FIRM NAME (If applicable)<br>Cozen O'Connor | | DOCKET NUMBER (when available)<br>L-3384-14 |
| OFFICE ADDRESS<br>457 Haddonfield Road, Suite 300<br>P.O. Box 5459<br>Cherry Hill, NJ 08002 | AUG 29 | DOCUMENT TYPE<br>Complaint<br><br>JURY DEMAND    ☒ Yes    ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>B.P. and K.P., Plaintiffs | CAPTION<br>B.P. and K.P. v. Black Horse Pike Reg. Sch. Dist., Ralph Ross, Frank Palatucci, Thomas Sullivan, Anthony Williams |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>005 | HURRICANE SANDY RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?    ☐ YES  ☒ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ Yes  ☒ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (If known)<br>Utica National Insurance Company (Black Horse Pike Regional School District); others unknown    ☐ NONE  ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☒ Yes  ☐ No | IF YES, IS THAT RELATIONSHIP?<br>☐ EMPLOYER/EMPLOYEE    ☐ FRIEND/NEIGHBOR    ☒ OTHER (explain)<br>☐ FAMILIAL    ☐ BUSINESS    Student/Teacher |
|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?    ☒ Yes    ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION
This case requires certain special treatment because it involves B.P., a child victim of sexual harassment and exploitation. B.P.'s identity and address - as well as the identity of his mother, K.P. - are not disclosed due to her desire to prevent further trauma, stigma, and mental, emotional, and physical harm by maintaining the confidentiality of that information.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ☒ No | IF YES, PLEASE IDENTIFY THE  REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2** 

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

**Track II - 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

**Track III - 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (Track IV)**
| | | | |
|---|---|---|---|
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 288 | PRUDENTIAL TORT LITIGATION |
| 271 | ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 284 | NUVARING | 296 | STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 601 | ASBESTOS |
| 287 | YAZ/YASMIN/OCELLA | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ **Putative Class Action**  ☐ **Title 59**

Cozen O'Connor
Hayes A. Hunt (application for admission *pro hac vice* to be filed)
Brian Kint (N.J. Bar I.D. 03834-2011)
Joshua Ruby (application for admission *pro hac vice* to be filed)
457 Haddonfield Road, Suite 300
P.O. Box 5459
Cherry Hill, NJ 08002
Telephone: (856) 910-5000
Facsimile: (856) 910-5075
*Attorneys for Plaintiffs, B.P and K.P.*

| | |
|---|---|
| B.P. and K.P., | SUPERIOR COURT OF NEW JERSEY |
|       Plaintiffs, | CAMDEN COUNTY |
| | LAW DIVISION |
|      v. | Docket No. *L-3384-14* |
| BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT, RALPH ROSS, FRANK PALATUCCI, THOMAS SULLIVAN, ANTHONY WILLIAMS, | CIVIL ACTION COMPLAINT |
|       Defendants. | |

## COMPLAINT

Plaintiffs B.P. and K.P., by and through their attorneys, as and for their Complaint allege the following:

### PARTIES

1.      Plaintiff B.P. was sexually harassed, sexually manipulated, and exposed to sexually explicit acts as a minor while a student at Highland Regional High School. B.P.'s identity and address are not disclosed herein due to his desire to maintain the confidentiality of that information.

2.      Plaintiff K.P. is the mother of Plaintiff B.P. Like her son, K.P.'s identity and address are not disclosed herein due to her desire to maintain the confidentiality of that information.

3.     Defendant BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT ("Black Horse Pike") was at all relevant times, and presently is, an instrumentality of the State of New Jersey, with its principal location at 580 Erial Road, Blackwood, New Jersey. Black Horse Pike is an educational institution as defined by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 – 1688 ("Title IX") and receives federal financial assistance. At all relevant times, and both before and since then, Black Horse Pike owned, operated, maintained, managed, supervised, and controlled the premises and employees at Highland Regional High School, a public high school located at 450 Erial Road, Blackwood, New Jersey. Black Hose Pike was responsible for hiring, training, supervising, directing, monitoring, and managing the teachers within the district, including those at Highland. Black Horse Pike also was responsible for formulating, promulgating, implementing, enforcing, updating, and maintaining policies, procedures, and regulations within the district to deal with reporting suspected cases of child sexual abuse and investigating and reporting instances of student-teacher misconduct, including sexual harassment and discrimination. Black Horse Pike was responsible for ensuring that such policies, procedures, and regulations adhered to federal and state law. Further, as a school district, Black Horse Pike owed a heightened duty to ensure pupil safety from foreseeable harm, particularly those presented by the intentional acts of school personnel.

4.     Defendant RALPH ROSS is an adult individual residing at 31 Uxbridge Place, Sewell, New Jersey. At all relevant times, Mr. Ross worked for the Black Horse Pike Regional School District as the superintendent. Mr. Ross was thereby imbued with state authority and subject to Black Horse Pike Regional School District control. As superintendent, Mr. Ross was responsible for hiring, training, supervising, directing, monitoring, and managing the teachers within the district, including those at Highland. Mr. Ross was also responsible for formulating,

2

promulgating, implementing, enforcing, updating, and maintaining policies, procedures, and regulations within the district regarding reporting suspected cases of child sexual abuse and investigating and reporting instances of student-teacher misconduct, including sexual harassment and discrimination. Mr. Ross was responsible for ensuring that such policies, procedures, and regulations adhered to federal and state law. Further, as superintendent, Mr. Ross owed a heightened duty to ensure pupil safety from foreseeable harm, particularly those presented by the intentional acts of school personnel.

5.    Defendant FRANK PALATUCCI is an adult individual residing at 300 Holly Parkway, Williamstown, New Jersey. At all relevant times, Mr. Palatucci worked for the Black Horse Pike Regional School District as the principal of Highland Regional High School. Mr. Palatucci was thereby imbued with state authority and subject to Black Horse Pike Regional School District control. As principal, Mr. Palatucci was responsible for hiring, training, supervising, directing, monitoring, and managing the teachers at Highland. Mr. Palatucci was also responsible for formulating, promulgating, implementing, enforcing, updating, and maintaining policies, procedures, and regulations at Highland to deal with reporting suspected cases of child sexual abuse and investigating and reporting instances of student-teacher misconduct, including sexual harassment and discrimination. Mr. Palatucci was responsible for knowing, following, obeying, and enforcing federal and state law regarding suspected cases of child abuse, including child sexual abuse. Further, as principal, Mr. Palatucci owed a heightened duty to ensure pupil safety from foreseeable harm, particularly those presented by the intentional acts of school personnel.

6.    Defendant THOMAS SULLIVAN is an adult individual residing at an address which, despite diligent efforts, is presently unknown. At all relevant times, Mr. Sullivan worked

3

for the Black Horse Pike Regional School District as the supervisor of special education services and child study team services at Highland Regional High School. Mr. Sullivan was thereby imbued with state authority and subject to Black Horse Pike Regional School District control. As special education director, Mr. Sullivan was responsible for hiring, training, supervising, directing, monitoring, and managing the teachers who provided services to special education students at Highland. As a public school teacher, Mr. Sullivan was responsible for monitoring and maintaining the health, safety, and welfare of students attending Highland. Mr. Sullivan was responsible for knowing, following, obeying, and enforcing federal and state law regarding suspected cases of child abuse, including child sexual abuse, and regarding sexual harassment and discrimination. Further, as special education director, Mr. Sullivan owed a heightened duty to ensure pupil safety from foreseeable harm, particularly those presented by the intentional acts of school personnel and directed at the especially vulnerable students in his charge.

7.      Defendant ANTHONY WILLIAMS is an adult individual residing at 1514 Cherrywood Drive, Clementon, New Jersey. At all relevant times, Mr. Williams worked for the Black Horse Pike Regional School District as a social worker and counselor at Highland Regional High School. Mr. Williams was thereby imbued with state authority and subject to Black Horse Pike Regional School District control. As a public school teacher, Mr. Williams was responsible for monitoring and maintaining the health, safety, and welfare of students attending Highland. Further, Mr. Williams was responsible for knowing, following, and obeying federal and state law regarding suspected cases of child abuse, including child sexual abuse, and regarding sexual harassment and discrimination. Moreover, as a social worker with responsibility for students with special needs, Mr. Williams owed a heightened duty to ensure

4

that the especially vulnerable students in his charge were free from sexual harassment and other exploitative acts.

## INTRODUCTION

8.      Plaintiffs bring this action to address the Defendants' purposeful, willful, knowing, intentional, reckless, systematic, and negligent violations of Plaintiffs' rights secured by the laws of the United States of America and the state of New Jersey.

9.      Starting in the spring of 2007, B.P. suffered extraordinary harm due to repeated sexual harassment, sexual manipulation, and exposure to sexually explicit acts by Defendant Williams and the sexually hostile environment that was created by all Defendants at Highland Regional High School.

10.     Defendants owed Plaintiff a duty to afford B.P. his constitutional right to be free from state-created dangers and to enjoy the benefit of equal protection of the laws. Defendants further owed B.P. a duty to provide a safe environment that was conducive to learning and that afforded him equal educational opportunity regardless of sex. Defendants further owned B.P. and K.P. common law duties to act with reasonable care under the circumstances.

11.     Defendants' breaches of these duties have caused B.P. significant and ongoing harm, including, but not limited to, psychological trauma, severe emotional and psychological distress, mental anguish, medical expenses, loss of self-esteem, disruption of schooling, loss of reputation, loss of trust of authority figures, and loss of future earning and learning capacity.

12.     Defendants' breaches of these duties have caused K.P. significant and ongoing harm including, but not limited to, psychological trauma, severe emotional and psychological distress, mental anguish, and medical expenses incurred on B.P.'s behalf.

13.     Defendants Black Horse Pike, Ross, Palatucci, and Sullivan knew or should have known that Defendant Williams was maintaining an improper relationship with B.P., a student at Highland.

14.     Defendants Black Horse Pike, Ross, Palatucci, and Sullivan actively frustrated K.P.'s efforts to prompt an investigation of the improper relationship between Defendant Williams and B.P. while B.P. was a student at Highland.

15.     Defendant Ross was a person who had the authority and responsibility to address discrimination and harassment (sexual or otherwise) and to institute corrective measures, and who had actual knowledge of harassment and discrimination in the school's programs.  Despite having this actual knowledge, Defendant Ross failed to adequately respond to stop the harassment and discrimination against B.P.

16.     Defendant Palatucci was a person who had the authority and responsibility to address discrimination and harassment (sexual or otherwise) and to institute corrective measures, and who had actual knowledge of harassment and discrimination in the school's programs.  Despite having this actual knowledge, Defendant Palatucci failed to adequately respond to stop the harassment and discrimination against B.P.

17.     Defendants' specific failures created a climate and culture in which Defendant Williams believed that he could act with impunity to sexually exploit, sexually harass, and/or

6

maintain improper relationships with students. These failures resulted from a policy, custom, or practice that placed the welfare of teachers, the administration, and the school district above the welfare of students,

18.     Defendants' specific failures created and permitted *quid pro quo* sexual harassment and a severe, pervasive, and persistent sexually hostile educational environment in violation of federal law and New Jersey law.

## FACTS

19.     B.P. attended Highland Regional High School starting in the fall of 2004.

20.     Defendants stood *in loco parentis* to B.P. during his time at Highland Regional High School.

21.     During his time at Highland, B.P. had learning difficulties and other conditions that required that he receive special education services.

22.     In the spring of 2007, Defendant Williams was assigned as B.P.'s counselor as part of B.P.'s special education support.

23.     Defendant Williams began cultivating an improper relationship with B.P. outside the bounds of the student-teacher relationship.

24.     Shortly after being assigned as B.P.'s counselor, Defendant Williams began exchanging frequent text messages with B.P., both during and outside of school hours.

25.     Shortly after being assigned as B.P.'s counselor, Defendant Williams began telephoning B.P. frequently, both during and outside of school hours.

7

26.     Shortly after being assigned as B.P.'s counselor, Defendant Williams began inviting B.P. to his home.

27.     Shortly after being assigned as B.P.'s counselor, Defendant Williams began hosting B.P. at his home.

28.     Shortly after being assigned as B.P.'s counselor, Defendant Williams began hosting B.P. at his home overnight.

29.     Shortly after being assigned as B.P.'s counselor, Defendant Williams would masturbate in front of B.P. at his home.

30.     Defendant Williams continued to engage in inappropriate sexual conduct with B.P. and in B.P.'s presence through the end of the 2006-2007 school year.

31.     During the summer of 2007, B.P. attended weekly private counseling sessions at Highland Regional High School with Defendant Williams.

32.     During the summer of 2007, K.P. learned that B.P. had been visiting the home of Defendant Williams.

33.     Defendant Williams hosted other Highland students at his home as well.

34.     These visits served no educational purpose and consisted entirely of playing video games, eating pizza, and engaging in sexual conduct, sexual contact, sexual abuse, and sexual harassment with B.P. and other students.

8

35.    K.P. told Defendant Williams that B.P. did not have her permission to visit Defendant Williams' home and that Defendant Williams should contact her if B.P. arrived at Defendant Williams' home.

36.    Defendant Williams refused to cooperate with K.P.'s request.

37.    K.P. notified Defendants Palatucci and Sullivan about B.P.'s visits to Defendant Williams' home and about her concerns about such visits.

38.    Defendants Palatucci and Sullivan told K.P. that it was "common" for Defendant Williams to host his counseling students at his home.

39.    Defendant Palatucci addressed K.P.'s concerns about Defendant Williams by asking K.P. if she was "accusing" Defendant Williams "of being gay."

40.    Defendants Palatucci and Sullivan refused to transfer B.P. to another counselor.

41.    Defendants Palatucci and Sullivan told K.P. that if Defendant Williams was not B.P.'s counselor, then B.P. would not receive any counseling services at all.

42.    Defendants Palatucci and Sullivan told K.P. that if Defendant Williams was not B.P.'s counselor, then B.P. would not receive any counseling services at all notwithstanding that B.P. was entitled to counseling services under state and federal law as part of his individualized education plan.

43.    Defendants Palatucci and Sullivan took no action at that time to investigate whether Defendant Williams was maintaining an inappropriate relationship with B.P.

44.     In the summer of 2007, K.P. pursued administrative proceedings seeking to force Black Horse Pike to provide B.P. with additional special education services at Highland.

45.     The administrative proceedings resulted in a determination that Black Horse Pike could send B.P. to Brookfield Academy in Haddonfield, New Jersey to receive such services for the 2007-2008 school year.

46.     Notwithstanding that B.P. was enrolled at Brookfield Academy, Defendant Williams continued to engage in an inappropriate relationship with B.P. and exchange inappropriate personal communications with B.P.

47.     During the fall of 2007, B.P. did not return home on two consecutive weekends.

48.     Concerned for B.P.'s welfare after his unexplained time away from home, K.P. called one of the frequently dialed and texted telephone numbers in B.P.'s mobile telephone. Defendant Williams answered.

49.     Defendant Williams refused to speak to K.P. about his relationship with B.P.

50.     Defendant Williams and B.P. exchanged eight full pages of text messages, including several picture messages, over the winter holidays in December 2007 and January 2008.

51.     In January 2008, K.P. attempted to bring the continued improper relationship between Defendant Williams and B.P. to light.

52.     K.P. shared the eight pages of text messages between Defendant Williams and B.P. with Defendant Palatucci and Defendant Sullivan in a meeting in January or February 2008.

53.     Defendant Palatucci became hostile at the meeting and yelled at K.P.

54.     Defendant Palatucci again angrily asked K.P. if she was "accusing" Defendant Williams "of being gay."

55.     Defendant Palatucci asserted that Defendant Williams had a "right" not to talk to K.P. about the inappropriate communications to B.P.

56.     Defendants Palatucci and Sullivan refused to address the inappropriate communications.

57.     Instead, Defendant Sullivan threatened to withdraw all special education services from B.P.

58.     Despite having clear evidence of an improper relationship between Defendant Williams and B.P. – the eight pages of text messages – Defendants Palatucci and Sullivan performed a wholly inadequate investigation of the relationship.

59.     Defendants Palatucci and Sullivan simply asked Defendant Williams about the text messages. Defendant Williams blamed B.P. for initiating contact by text message and attempting to cultivate the improper relationship.

60.     Defendants Palatucci and Sullivan told K.P. that she should stop B.P. from "harassing" Defendant Williams.

61.     Defendants Palatucci and Sullivan performed no further investigation.

62.     K.P. responded by writing letters to each of the members of the Board of Education of the Black Horse Pike Regional School District (collectively, the "Board Members")

11

about the improper relationship between Defendant Williams and B.P., each of which included a copy of the eight pages of text messages.  None of the Board Members responded directly.

63.    Instead, the Board of Education held a closed hearing in March or April 2008 regarding K.P.'s "complaint" against Defendant Williams.

64.    Defendant Williams was not required to appear at the hearing.  His private counsel attended in his stead.  Counsel for the teachers' union and Black Horse Pike were also present.

65.    At the closed hearing, Defendant Palatucci was again angry and combative with K.P.  Defendant Palatucci blamed K.P. for B.P.'s visits to Defendant Williams' home.

66.    At the closed hearing, Defendant Palatucci again threatened to withdraw B.P.'s access to special education services.

67.    At the closed hearing, Defendant Palatucci admitted that he and other Black Horse Pike employees knew that Defendant Williams had hosted B.P. at his home.

68.    None of the Defendants, and no other agent or employee of Black Horse Pike, reported this information to DYFS or law enforcement.

69.    At the closed hearing, the Board Members did not ask questions of Defendant Williams' counsel about the text messages, B.P.'s visits to Defendant Williams' home, or any other aspect of the inappropriate relationship between Defendant Williams and B.P.

70.    Instead, the Board Members focused their questioning on K.P.

71.   The Board Members asked K.P. why she could not "control" her son, B.P., and stop his visits to Defendant Williams' home.

72.   The Board Members refused to consider that Defendant Williams was subjecting B.P. to sexual abuse, manipulation, or harassment.

73.   Following the closed hearing, none of the Defendants took any additional action to investigate Defendant Williams' inappropriate relationship with B.P. any further.

74.   Following the closed hearing, none of the Defendants took any steps to ensure that Defendant Williams no longer had contact with B.P.

75.   Following the closed hearing, Defendant Palatucci retaliated against B.P.

76.   B.P. attended a talent show at Highland in the spring of 2008.

77.   Following the talent show, Defendant Palatucci threatened the prosecution of trespassing claims against B.P. based on his attendance at the talent show.

78.   B.P. graduated from high school in 2008.

79.   Defendant Palatucci prevented B.P. from attending his graduation ceremony at Highland.

80.   After abusing his position of authority as B.P.'s counselor to groom B.P. throughout his high school years, Defendant Williams continued to cultivate an inappropriate relationship with B.P. after B.P.'s high school graduation.

13

81.    In early 2010, K.P. discovered that Defendant Williams had continued to send frequent text messages to B.P. throughout 2009 and into 2010.

82.    Due in part to the harassing presence of Defendant Williams, K.P. moved her family from New Jersey to Maryland in 2010.

83.    In October 2011, B.P. visited New Jersey and went to Defendant Williams' home.

84.    B.P. has continued to suffer significant psychiatric difficulties, mental anguish, emotional trauma, and other forms of mental and physical pain and suffering.

85.    Despite Defendants' efforts to conceal their illegal conduct, in 2013 the Camden County Prosecutor's Office conducted an investigation into Defendant Williams' sexual abuse of another teenage boy.

86.    That investigation resulted in the arrest of Defendant Williams for endangering the welfare of a child on September 10, 2013.

87.    On December 13, 2013, following a guilty plea, Defendant Williams was convicted of multiple crimes related to the above-described conduct.

88.    On December 13, 2013, following his guilty plea, Defendant Williams was sentenced to 12 months of probation and was forbidden from having contact with his victim.

89.    In September 2013, Plaintiffs were contacted by the Camden County Prosecutor's Office as part of an investigation into Defendant Williams' conduct towards other minors, including B.P.

14

90.     B.P.'s emotional, learning, and cognitive difficulties prevented him from understanding the harmful, criminal, and egregiously wrongful nature of Defendant Williams' conduct until the arrest of Defendant Williams and the contact from the Camden County Prosecutor's Office.

91.     B.P.'s emotional, learning, and cognitive difficulties caused him to repress the memory of the harmful, criminal, and egregiously wrongful conduct of Defendant Williams until the arrest of Defendant Williams and the contact from the Camden County Prosecutor's Office.

92.     Prior to Defendant Williams' arrest and the contact from the Camden County Prosecutor's office, B.P. was unaware of the causal connection between Defendant Williams' egregious and sexually explicit behavior, the acts and omissions of all Defendants in permitting that behavior to continue, and the extensive and ongoing harm that he has suffered and continues to suffer.

93.     Prior to Defendant Williams' arrest and the contact from the Camden County Prosecutor's office, K.P. was unaware that Defendant Williams had sexually harassed B.P. and exposed B.P. to sexually explicit conduct, such as masturbating in front of him.

94.     Prior to Defendant Williams' arrest and the contact from the Camden County Prosecutor's office, K.P. was unaware of the causal connection between Defendant Williams' egregious and sexually explicit behavior, the acts and omissions of all Defendants in permitting that behavior to continue, and the extensive and ongoing harm that she and B.P. have suffered and continue to suffer.

95.     The aforesaid actions and breaches of duty by Defendants were a substantial factor in causing and were the proximate cause of B.P. suffering severe mental and physical injuries, which have caused pain and suffering from the date of the injuries and will continue to cause pain and suffering in the future.  This pain and suffering has materially and permanently compromised B.P.'s physical and mental health and adversely affected his education and long-term earning capacity.  Additionally, this pain and suffering and resulting disabilities have caused, and will cause in the future, B.P. to incur medical expenses and other economic and non-economic losses, in an amount to be proven at trial.

96.     The aforesaid actions and breaches of duty by Defendants were a substantial factor in causing and were the proximate cause of K.P. suffering severe mental and physical injuries, which have caused pain and suffering from the date of the injuries and will continue to cause pain and suffering in the future.  This pain and suffering has materially and permanently compromised K.P.'s physical and mental health.  Additionally, this pain and suffering and resulting disabilities have caused, and will cause in the future, K.P. to incur medical expenses on her own behalf and on behalf of B.P., as well as other economic and non-economic losses, in an amount to be proven at trial.

97.     Because Defendants acted intentionally, knowingly, and with deliberate indifference to the foreseeable consequences of their actions and breaches of duty, Plaintiffs are entitled to punitive damages against all Defendants in an amount necessary to deter future similar conduct by these Defendants or any other school district or official.

**COUNT I – Title IX – Sexual Harassment – B.P. against Defendant Black Horse Pike**

98.     The Plaintiffs repeat the allegations above as if fully set forth herein.

16

99.   Defendant Black Horse Pike is an educational institution as defined by Title IX and receives federal financial assistance.

100.   Defendant Williams' improper relationship with B.P., combined with the efforts of the other Defendants to tolerate, condone, and turn a blind eye to such illicit relationships, created a culture of sexual exploitation at Highland and constituted *quid pro quo* sexual harassment and a severe, pervasive, and persistent sexually hostile educational environment in violation of Title IX.

101.   Defendants Ross and Palatucci were "appropriate . . . persons" as defined by 20 U.S.C. § 1682(2) because each had authority to address the alleged discrimination and to institute corrective measures on Black Horse Pike's behalf.

102.   Based on K.P.'s repeated attempts to report the improper relationship between Defendant Williams and B.P., Defendants Ross and Palatucci had actual notice that Defendant Williams was engaging in an improper relationship with and sexually harassing B.P.

103.   Defendants Ross and Palatucci acted with deliberate indifference in response to the notice of Defendant Williams' relationship with B.P. by:

   a)   reacting with hostility to K.P.'s attempts to bring Defendant Williams' conduct to light;

   b)   dismissing K.P.'s account because it constituted "accusing" Defendant Williams "of being gay;"

   c)   declining to conduct and otherwise deliberately obstructing any meaningful investigation that might have uncovered the improper relationship between Defendant Williams and B.P.;

   d)   failing to have an adequate policy in place for addressing sexual harassment in the form of improper relationships between teachers and students;

17

e)   failing to adhere to the inadequate policy that did exist for addressing sexual harassment in the form of improper relationships between teachers and students;

f)   failing to adhere to the inadequate policy that did exist for addressing inappropriate conduct and contact between teachers and students;

g)   failing to discipline teachers for inappropriate conduct and contact between teachers and students;

h)   affirmatively condoning and encouraging inappropriate conduct and contact between teachers and students, thereby facilitating and tolerating improper relationships between teachers and students;

i)   failing to communicate to students and their parents the name, office address, and telephone number of the "responsible employee" designated to carry out compliance measures under Title IX as required by 34 C.F.R. § 106.8(a);

j)   failing to publish to students and their parents the "grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging" Title IX violations as required by 34 C.F.R. § 106.8(b);

k)   tolerating, facilitating, condoning, and enabling improper relationships between students and teachers, thereby creating a culture that permitted and encouraged teachers' sexually predatory behavior, *quid pro quo* sexual harassment, and a severely and pervasively sexually hostile environment.

104.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. suffered extensive physical, psychiatric, and emotional harm entitling him to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, B.P. demands judgment against Defendant Black Horse Pike together with interest, punitive damages, attorneys' fees, and costs of suit.

**COUNT II – 42 U.S.C. § 1983 – Violation of Civil Rights – B.P. against Defendant Williams in his individual capacity**

105.   The Plaintiffs repeat the allegations above as if fully set forth herein.

106.   Defendant Williams is a "person" within the meaning of 42 U.S.C. § 1983.

18

107.    At all times relevant to this action, Defendant Williams acted "under color of state law" within the meaning of 42 U.S.C. § 1983 by virtue of his employment as a social worker at Highland.

108.    Defendant Williams' improper relationship with B.P. violated B.P.'s rights to due process and equal protection of the laws as guaranteed by the United States Constitution.

109.    Defendant Williams abused his position of public trust to sexually exploit young male students, such as B.P.

110.    Defendant Williams repeatedly so abused his position when he engaged in physically intimate activity with B.P. and sexually explicit acts in B.P.'s presence over a period of years.

111.    Defendant Williams' exploitative behavior in violation of the public trust and the duties of his office is so egregious and outrageous that it may fairly be said to shock the contemporary conscience.

112.    Defendant Williams' sexual exploitation of B.P. constitutes a state-created danger that further violated his constitutional right to due process:

a)      The harm Defendant Williams caused, the sexual harassment of B.P., was foreseeable and fairly direct;

b)      Defendant Williams, clothed with the authority of his position as a schoolteacher, abused the public trust and the duties of his office in such an egregious, outrageous manner that he acted with a degree of culpability that shocks the conscience;

c)      B.P.'s status as a public school student meant that a relationship between the state and B.P. existed such that B.P. was a foreseeable victim of Defendant Williams' acts, or a member of a discrete class of persons subjected to the potential harm brought about by the Defendant Williams' actions, as opposed to a member of the public in general; and

19

    d)    Defendant Williams affirmatively used his authority in a way that created a danger to B.P. or that rendered B.P. more vulnerable to danger than had Defendant Williams not acted at all when he repeatedly sexually harassed him.

113.    Defendant Williams' sexual exploitation of B.P. also violated B.P.'s right to equal protection of the laws.

114.    Defendant Williams targeted his young male students, such as B.P., for sexual exploitation.

115.    Defendant Williams did not target his similarly situated young female students.

116.    Defendant Williams' decision to violate B.P.'s constitutional rights was therefore based upon his gender and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

117.    As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. suffered extensive physical, psychiatric, and emotional harm entitling him to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, B.P. demands judgment against Defendant Williams together with interest, punitive damages, attorneys' fees, and costs of suit.

**COUNT III – 42 U.S.C. § 1983 – Violation of Civil Rights – B.P. against Defendants Ross, Palatucci, and Sullivan in their individual capacities**

118.    The Plaintiff repeats the allegations above as if fully set forth herein.

119.    Defendants Ross, Palatucci, and Sullivan are each a "person" within the meaning of 42 U.S.C. § 1983.

20

120. At all times relevant to this action, Defendants Ross, Palatucci, and Sullivan acted "under color of state law" within the meaning of 42 U.S.C. § 1983 by virtue of their employment as schoolteachers and administrators.

121. The various decisions of Defendants Ross, Palatucci, and Sullivan to tolerate, facilitate, or turn a blind eye to Defendant Williams' improper relationship with B.P. violated B.P.'s rights to due process and equal protection of the laws as guaranteed by the United States Constitution.

122. Defendants Palatucci and Sullivan abused their positions of public trust and responsibility insofar as they tolerated, facilitated, or turned a blind eye to Defendant Williams' illicit relationship with Plaintiff by:

    a) violating their respective duties to report and/or investigate the relationship when they became aware of it;

    b) actively frustrating K.P.'s attempts to bring the improper relationship to light; and

    c) failing to supervise Defendant Williams in any way even after knowing about the extent of his improper communications with B.P.

123. Defendant Ross abused his positions of public trust and responsibility insofar as he tolerated, facilitated, and turned a blind eye to Defendant Williams' improper relationship with B.P. by:

    a) violating his duties to report and/or investigate the relationship when he became aware of it;

    b) failing to take any steps to ensure that any meaningful investigation into the improper relationship took place;

    c) deliberately abdicating any and all responsibility to supervise any of the employees or agents of Black Horse Pike and prevent their wrongful conduct during the course of the "investigation;"

d)    failing to demand a written report of the "investigation" and the allegations so as to make an independent determination of the relevant facts and circumstances; and

e)    failing to supervise his subordinates in any way in order to ensure that his subordinates acted responsibly in addressing the possibility of an improper relationship between Defendant Williams and B.P.

124.    This conduct of Defendants Ross, Palatucci, and Sullivan is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

125.    Because this conduct affirmatively enabled and facilitated Defendant Williams' improper, exploitative relationship with B.P., it constitutes a state-created danger that further violated B.P.'s constitutional right to due process:

a)    The harm Defendants Ross, Palatucci, and Sullivan caused by facilitating the improper relationship between Defendant Williams and B.P. and the sexual harassment and exploitation of B.P., was foreseeable and fairly direct;

b)    Defendants Ross, Palatucci, and Sullivan, clothed with the authority of their positions as schoolteachers and administrators, abused the public trust and the duties of their offices in such an egregious, outrageous manner that they each acted with a degree of culpability that shocks the conscience;

c)    B.P.'s status as a public school student with special needs meant that a relationship between Defendants Ross, Palatucci, and Sullivan and B.P. existed such that B.P. was a foreseeable victim of the acts of Defendants Ross, Palatucci, and Sullivan, or a member of a discrete class of persons subjected to the potential harm brought about by the acts of Defendants Ross, Palatucci, and Sullivan, as opposed to a member of the public in general; and

d)    By taking affirmative steps to enable, facilitate, condone, and turn a blind eye to Defendant Williams' improper, exploitative relationship with B.P., Defendants Ross, Palatucci, and Sullivan affirmatively used their authority in a way that created a danger to B.P. or that rendered B.P. more vulnerable to danger than had Defendants Ross, Palatucci, and Sullivan not acted at all.

126.    Because this conduct affirmatively facilitated and enabled Defendant Williams' improper, exploitative relationship with B.P., this conduct also violated B.P.'s right to equal protection of the laws.

22

127.    Defendant Williams targeted his young male students, such as B.P., for sexual exploitation.

128.    Defendant Williams did not target his similarly situated young female students.

129.    Defendants Ross, Palatucci, and Sullivan tolerated, facilitated, enabled, and condoned the sexual exploitation of B.P. and others because they were young men.

130.    Defendant Palatucci specifically expressed hostility to K.P.'s attempts to bring the improper relationship between Defendant Williams and B.P. to light by asking K.P. if she was "accusing" Defendant Williams "of being gay."

131.    Defendants Ross, Palatucci, and Sullivan did not similarly enable, facilitate, or turn a blind eye to the sexual exploitation of young female students.

132.    The various decisions of Defendants Ross, Palatucci, and Sullivan to facilitate, enable, tolerate, condone, and turn a blind eye to Defendant Williams' improper, exploitative relationship with B.P. were therefore based upon B.P.'s gender and violate his rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

133.    As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. suffered extensive physical, psychiatric, and emotional harm entitling him to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, B.P. demands judgment against Defendants Ross, Palatucci, and Sullivan, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

### COUNT IV – 42 U.S.C. § 1983 – Violation of Civil Rights – B.P. against Defendant Black Horse Pike and Defendants Ross, Palatucci, and Sullivan in their official capacities

134.   The Plaintiffs repeat the allegations above as if fully set forth herein.

135.   Defendant Black Horse Pike is liable for the constitutional violations of its employees as alleged in Count II and Count III because such violations were caused by (1) the inadequate policies promulgated by Black Horse Pike respecting sexual harassment and child sexual abuse, (2) a pervasive custom and practice having the force of law of ignoring those inadequate policies that did exist respecting sexual harassment and child sexual abuse, and (3) a failure to train and supervise its employees respecting sexual harassment and child sexual abuse.

136.   At all relevant times, Black Horse Pike had inadequate policies governing improper communications between students and teachers, such as text messaging.

137.   At all relevant times, Black Horse Pike had inadequate policies governing the proper response to discovery of improper communications between students and teachers, such as text messaging.

138.   At all relevant times, Black Horse Pike had inadequate policies governing investigation into improper communications between students and teachers, such as text messaging.

139.   At all relevant times, Black Horse Pike had inadequate policies governing improper relationships between students and teachers.

24

140. At all relevant times, Black Horse Pike had inadequate policies governing the proper response to discovery of improper relationships between students and teachers.

141. At all relevant times, Black Horse Pike had inadequate policies governing investigation into improper relationships between students and teachers.

142. At all relevant times, Black Horse Pike had inadequate policies governing sexual relationships between students and teachers.

143. At all relevant times, Black Horse Pike had inadequate policies governing the proper response to discovery of sexual relationships between students and teachers.

144. At all relevant times, Black Horse Pike had inadequate policies governing investigation into sexual relationships between students and teachers.

145. In addition to the inadequacy of Black Horse Pike's policies, a custom and practice existed of tolerating improper relationships between students and teachers.

146. Notwithstanding the impropriety of such communications, students and teachers frequently exchanged inappropriate text messages without the teachers facing discipline.

147. Notwithstanding the impropriety of such relationships, students and teachers frequently engaged in inappropriate social relationships outside the normal teacher/student relationship without the teachers facing discipline.

148. The custom and practice of deliberately tolerating such conduct was so widespread as to have the force of law.

149.   The custom and practice of deliberately tolerating such conduct created a climate where inappropriate relationships between teachers and students were enabled, and even encouraged, and where teachers could conduct such relationships without fear of investigation or discipline.

150.   The custom and practice of deliberately tolerating this conduct contributed to and/or caused Defendant Williams to have the ability to exploit and maintain an inappropriate relationship with B.P.. Accordingly, execution of this custom and practice inflicted the constitutional injury upon B.P.

151.   The custom and practice of deliberately tolerating this conduct contributed to and/or caused Defendants Ross, Palatucci, and Sullivan to enable, facilitate, condone, and turn a blind eye to Defendant Williams' improper, exploitative relationship with B.P. Accordingly, execution of this custom and practice inflicted the constitutional injury upon B.P.

152.   In addition to its inadequate policies and customs of tolerating improper conduct, Black Horse Pike failed to train its employees with respect to responding to allegations of sexual harassment and child sexual abuse.

153.   Based on the total failure of any of the individual Defendants to adhere to their responsibilities, it appears that Black Horse Pike personnel and administrators were wholly ignorant of the boundaries of proper relationships between teachers and students and their responsibility to police those boundaries.

154.   It is obvious that the duties of high school teachers and administrators include refraining from inappropriate contact and relationships with students, providing an educational

26

environment free from sexually predatory employees and sexual harassment, and investigating any inappropriate sexual contact, sexually predatory behavior, or sexual harassment with promptness, thoroughness, and impartiality.

155.   It is obvious that high school teachers and administrators require training about, among other matters, refraining from inappropriate contact and relationships with students, providing an educational environment free from sexually predatory employees and sexual harassment, and investigating any inappropriate contact, sexually predatory behavior, or sexual harassment with promptness, thoroughness, and impartiality.

156.   It is obvious that, without such training, illicit relationships and other conduct violating students' constitutional rights are highly likely to result, as it did here with regard to Defendant Williams' improper relationship with B.P.

157.   In light of the duties assigned to its officers and employees, the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of Black Horse Pike can reasonably be said to have been deliberately indifferent to the need for further training.

158.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. suffered extensive physical, psychiatric, and emotional harm entitling him to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, B.P. demands judgment against Defendants Black Horse Pike, Ross, Palatucci, and Sullivan, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

### COUNT V – New Jersey Law Against Discrimination – B.P. against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams

159.   The Plaintiffs repeat the allegations above as if fully set forth herein.

160.   Defendant Black Horse Pike is a "place of public accommodation" as defined by N.J. Stat. Ann. § 10:5-5(l).

161.   Defendants Ross, Palatucci, Sullivan, and Williams were "agent[s]" or "employee[s]" of Defendant Black Horse Pike within the meaning of N.J. Stat. Ann. § 10:5-12(f)(1).

162.   Upon becoming aware of Defendant Williams' improper relationship with B.P., Defendants Ross, Palatucci, Sullivan, and Williams each knew or should have known of Defendant Williams' discriminatory sexual harassment of Plaintiff.

163.   After K.P.'s numerous attempts to bring the improper relationship between Defendant Williams and B.P. to light, Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams knew or should have known of Defendant Williams' discriminatory sexual harassment of Plaintiff.

164.   Based on the complete and total failure of any of the named Defendants to take any steps to investigate or stop Defendant Williams' improper relationship with B.P., Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams failed to take action reasonably calculated to end the harassment.

28

165.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. suffered extensive physical, psychiatric, and emotional harm entitling him to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, B.P. demands judgment against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

### COUNT VI – Negligence, Negligent Hiring, Negligent Supervision and Training, and Negligent Retention – B.P. and K.P. against Defendant Black Horse Pike

166.   The Plaintiffs repeat the allegations above as if fully set forth herein.

167.   Defendant Black Horse Pike had a common law duty to exercise reasonable care for the health and safety of the children entrusted to its care as part of its role as a school district acting *in loco parentis*. This duty extended to B.P. and K.P.

168.   As extensively alleged above, Black Horse Pike breached this duty of care to Plaintiffs by taking inadequate steps to prevent its teachers from forming improper relationships with students, failing to investigate and discipline such improper relationships and other inappropriate conduct when they came to light, and otherwise permitting a sexually hostile environment to exist and persist.

169.   Black Horse Pike's extensive breaches of its duty of care, alleged above, also mean that Black Horse Pike, having a legal duty for the care of Plaintiffs, caused harm that would make B.P. an abused or neglected child, by permitting or allowing Defendant Williams to perform indecent, immoral and unlawful acts in the presence of the B.P. that may tend to

29

debauch or endanger the morals of B.P. in violation of N.J. Stat. Ann. § 2C:24-4 and N.J. Stat. Ann. § 9:6-1. The violation of these statutes constitutes additional evidence of Black Horse Pike's negligence.

170. Black Horse Pike's duty of reasonable care also extended to taking reasonable, prudent steps to ensure that it exercised reasonable care in the hiring, supervision, training, and retention of its employees.

171. Black Horse Pike personnel knew or had reason to know of Defendant Williams' improper relationship with B.P. at least as early as 2007.

172. As early as 2007, Black Horse Pike personnel knew or had reason to know that Defendant Williams repeatedly and intentionally maintained inappropriate contact with B.P.

173. Based on its actual or constructive knowledge of Defendant Williams' misconduct, Black Horse Pike could have foreseen that Defendant Williams would begin and maintain improper, exploitative relationships with his students.

174. Black Horse Pike therefore knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of Defendant Williams and could reasonably have foreseen that such qualities created a risk of harm to B.P.

175. As a direct and proximate result of Black Horse Pike's negligent hiring and retention of Defendant Williams, notwithstanding its knowledge of his inappropriate behavior, Defendant Williams was able to maintain his exploitative and predatory relationship with B.P. because of the access to B.P. that his continued employment granted him.

176.   With this daily access, Defendant Williams could continue exploiting and sexually harassing B.P.

177.   Accordingly, through the negligence of Black Horse Pike in hiring and retaining Defendant Williams, Defendant Williams' incompetence, unfitness, or dangerous characteristics proximately caused injuries to Plaintiffs.

178.   In addition, Black Horse Pike could have foreseen that Defendants Palatucci and Sullivan would respond inappropriately to information about improper, exploitative relationships with students and would attempt to retaliate against those concerned about such relationships, such as B.P. and K.P.

179.   Neither Defendant Palatucci nor Defendant Sullivan still works at Highland or in any other capacity for Black Horse Pike.

180.   After leaving the employ of Black Horse Pike, Defendant Sullivan was fired from his position as special education director for the Penns Grove-Carneys Point Regional Board of Education.

181.   Defendant Sullivan was fired from his position as special education director for the Penns Grove-Carneys Point Regional Board of Education due in part to allegations that he created a hostile work environment for his subordinates.

182.   Black Horse Pike also negligently supervised Defendant Williams, knowing what it did about his inappropriate contact and relationship with B.P.

31

183.   Black Horse Pike personnel knew or had reason to know of Defendant Williams' improper relationship with B.P at least as early as 2007.

184.   As early as 2007, Black Horse Pike personnel knew or had reason to know that Defendant Williams repeatedly and intentionally maintained inappropriate contact with B.P.

185.   Based on its actual or constructive knowledge of Defendant Williams' misconduct, Black Horse Pike could have foreseen that Defendant Williams would begin and maintain improper, exploitative relationships with his students.

186.   Black Horse Pike therefore had a duty to supervise Defendant Williams to ensure that such relationships did not begin or continue.

187.   Black Horse Pike engaged in no such supervision and/or engaged in wholly inadequate supervision.

188.   Unsupervised, Defendant Williams began and continued an improper, exploitative relationship with B.P.

189.   Accordingly, Black Horse Pike's failure to supervise Defendant Williams enabled him to begin and continue an improper, exploitative relationship with B.P.

190.   Defendant Williams' improper, exploitative relationship with B.P. resulted in significant mental, physical, and emotional harm to Plaintiffs.

191.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. and K.P. suffered extensive physical, psychiatric, and emotional harm entitling them to compensatory

32

damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, Plaintiffs demand judgment against Defendant Black Horse Pike together with interest, punitive damages, attorneys' fees, and costs of suit.

**COUNT VII – Negligence – B.P. and K.P. against Defendants Ross, Palatucci, Sullivan, and Williams**

192.   The Plaintiffs repeat the allegations above as if fully set forth herein.

193.   Defendants Ross, Palatucci, Sullivan, and Williams each had a common law duty to exercise reasonable care for the health and safety of the children entrusted to their care as part of their positions as schoolteachers and administrators.

194.   This duty of reasonable care extended to taking reasonable, prudent steps to ensure that such students, like B.P., were protected from improper and exploitative behavior, sexual harassment, and sexual abuse.

195.   As extensively alleged above, Defendants Ross, Palatucci, Sullivan, and Williams breached this duty when they took no action to prevent or stop Defendant Williams' improper and exploitative relationship with B.P.

196.   Defendants Ross, Palatucci, Sullivan, and Williams also breached their duty of care because their actions meant that each one of them, having a legal duty for the care of B.P., caused B.P. harm that would make B.P. an abused or neglected child, by permitting or allowing Defendant Williams to perform indecent, immoral and unlawful acts in the presence of B.P. that may tend to debauch or endanger the morals of B.P., in violation of N.J. Stat. Ann. § 2C:24-4

33

and N.J. Stat. Ann. § 9:6-1.  The violations of these statutes constitute additional evidence of the negligence of Defendants Ross, Palatucci, Sullivan, and Williams.

197.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. and K.P. suffered extensive physical, psychiatric, and emotional harm entitling them to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, Plaintiffs demand judgment against Defendants Ross, Palatucci, Sullivan, and Williams, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

### COUNT VIII – Intentional Infliction of Emotional Distress – B.P. and K.P. against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams

198.   The Plaintiffs repeat the allegations above as if fully set forth herein.

199.   As extensively alleged above, Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams acted intentionally or recklessly by engaging in an exploitative and improper relationship with B.P., facilitating, condoning, enabling, or encouraging the improper and exploitative relationship with B.P., and/or failing to respond adequately despite knowledge of a substantial and unjustifiable risk that inaction would result in Defendant Williams' continued improper and exploitative relationship with B.P.

200.   As extensively alleged above, this intentional and reckless conduct was outrageous and well outside the boundaries of reasonable conduct in our society.

34

201.   As a direct and proximate result of the outrageous conduct of Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams, Defendant Williams' improper and exploitative relationship with B.P. continued, and Plaintiffs suffered severe emotional distress.

202.   As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. and K.P. suffered extensive physical, psychiatric, and emotional harm entitling them to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, Plaintiffs demand judgment against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

**COUNT IX – Negligent Infliction of Emotional Distress – B.P. and K.P. against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams**

203.   The Plaintiffs repeat the allegations above as if fully set forth herein.

204.   Defendant Black Horse Pike had a common law duty to exercise reasonable care for the health and safety of the children entrusted to its care as part of its role as a school district acting *in loco parentis*.

205.   Defendants Ross, Palatucci, Sullivan, and Williams each had a common law duty to exercise reasonable care for the health and safety of the children entrusted to their care as part of their positions as schoolteachers and administrators.

35

206.    As extensively alleged above, Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams each breached their common law duties to Plaintiff.

207.    As a consequence of these breaches, Defendant Williams was able to begin and continue an improper, exploitative relationship with B.P.

208.    As a direct and proximate result of the conduct of Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams, Defendant Williams' improper and exploitative relationship with B.P. continued, and Plaintiffs suffered severe emotional distress.

209.    As a result of these repeated and egregious acts and failures to act, Defendant Williams' improper, exploitative relationship with B.P. continued unabated, and B.P. and K.P. suffered extensive physical, psychiatric, and emotional harm entitling them to compensatory damages, incidental damages, pain and suffering and other non-economic damages, punitive damages, attorneys' fees, costs, and any other just and equitable relief that the Court deems proper.

WHEREFORE, Plaintiffs demand judgment against Defendants Black Horse Pike, Ross, Palatucci, Sullivan, and Williams, jointly and severally, together with interest, punitive damages, attorneys' fees, and costs of suit.

Cozen O'Connor

By: Hayes A. Hunt (application for admission *pro hac vice* to be filed)
Brian Kint (N.J. Bar I.D. 03834-2011)
Joshua Ruby (application for admission *pro hac vice* to be filed)
457 Haddonfield Road, Suite 300
P.O. Box 5459

36

Cherry Hill, NJ 08002
Telephone: (856) 910-5000
Facsimile: (856) 910-5075
*Attorneys for Plaintiffs, B.P. and K.P.*

Dated: August 29, 2014

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues in this matter.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Hayes A. Hunt, Brian Kint, and Joshua Ruby are designated as trial counsel on behalf of Plaintiff in this action.

## DEMAND FOR COMPLIANCE WITH RULES 1:5-1(a) AND 4:17-4(c)

Undersigned counsel hereby demands, pursuant to Rules 1:5-1(a) and 4:17-4(c), that each party serving pleadings, interrogatories, or responses thereto, shall serve copies of all such pleadings, interrogatories, or responses thereto on undersigned counsel.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Pursuant to Rule 4:17-1, Plaintiff hereby demands from Defendants answers to Form C Interrogatories.

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my knowledge, that the matter in controversy in this action is not the subject of any other action pending in any other court of this State. I further certify that the matter in controversy in this action is not the subject of a pending arbitration proceeding in this State, nor is any other action or arbitration proceeding contemplated. I certify that there is no other party who should be joined in this action at this time.

Cozen O'Connor

By: Hayes A. Hunt (application for
admission *pro hac vice* to be filed)
Brian Kint (N.J. Bar I.D. 03834-2011)
Joshua Ruby (application for admission *pro
hac vice* to be filed)
*Attorneys for Plaintiffs, B.P. and K.P.*

Dated: August 29, 2014

38