**HILL WALLACK LLP**
**Jeffrey L. Shanaberger, Esq. - 20931983**
202 Carnegie Center
Princeton, NJ 08543-5226
(609) 924-0808
Attorneys for Defendants, Black Horse Pike Regional School District,
Ralph Ross, Frank Palatucci, and Thomas Sullivan

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B.P. and K.P., <br><br>                 Plaintiffs, <br><br> vs. <br><br> BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT, RALPH ROSS, FRANK PALATUCCI, THOMAS SULLIVAN, ANTHONY WILLIAMS <br><br>                 Defendants. | Civil Action. No. 1:14-cv-06615-JBS-JS <br><br> **Document electronically filed** |

**BRIEF OF DEFENDANTS BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT, RALPH ROSS, FRANK PALATUCCI, AND THOMAS SULLIVAN IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED PER L.CIV.R. 78.1(b)**

**MOTION DAY – DECEMBER 15, 2014**

**Of Counsel:**
Jeffrey L. Shanaberger, Esq., Attorney ID # 20931983

**On the Brief:**
Jeffrey L. Shanaberger, Esq.
Cherylee O. Melcher, Esq., Attorney ID # 16972003

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS/PROCEDURAL HISTORY ..................................... 3

STANDARD OF REVIEW – RULE 12(b)(6) ...................................................... 6

LEGAL ARGUMENT ........................................................................................... 8

POINT I .................................................................................................................. 8

PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS AND
MUST BE DISMISSED ..................................................................................... 8

POINT II .............................................................................................................. 10

THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED AS TO THE FEDERAL CLAIMS UNDER TITLE IX AND SECTION 1983
AGAINST THE SCHOOL DEFENDANTS AND MUST BE DISMISSED ...................... 10

   a.   Title IX, 20 U.S.C. § 1681, et seq. ...................................................... 10

   b.   42 U.S.C. § 1983 ................................................................................ 14

      1.   Individual Claims – Count III ...................................................... 15

      2.   Official Capacity/Board Claims -- Count IV ................................. 19

   c.   Failure to Train .................................................................................. 22

   d.   Policy, Practice, or Custom ................................................................ 24

POINT III ............................................................................................................. 25

PLAINTIFF'S COMPLAINT DOES NOT MAKE A PRIMA FACIE SHOWING FOR
VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION REQUIRING
DISMISSAL OF THIS CLAIM .......................................................................... 25

POINT IV ............................................................................................................. 28

PLAINTIFFS' STATE LAW NEGLIGENCE CLAIMS LACK ANY FACTUAL
SPECIFICITY AND ARE, THUS, INSUFFICIENT TO SURVIVE A MOTION TO
DISMISS UNDER RULE 12(b)(6) .................................................................... 28

POINT V ............................................................................................................... 31

COUNT VIII MUST BE DISMISSED AS PLAINTIFFS HAVE FAILED TO STATE A
CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND IT IS
INSUFFICIENT TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6) ......... 31

POINT VI ............................................................................................................. 33

PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED AS NO
CLAIM FOR PUNITIVE DAMAGES CAN SURVIVE A 12(b)(6) MOTION TO DISMISS 33

POINT VII ............................................................................................................ 34

AS PLAINTIFFS WERE NOT MINORS WHEN THE COMPLAINT WAS FILED, THE
PLEADINGS SHOULD REFLECT THEIR FULL NAMES ................................ 34

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal,
129 S.Ct. 1937 L.Ed.2d 868 (2009) ............................................................ 1, 7, 31, 33

Baker v. Monroe Tp.,
50 F.3d 1186 (3d Cir. 1995).......................................................................... 17

Beers- Capitol v. Whetzel,
256 F.3d 120 (3d Cir. 2001).......................................................................... 21

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ............................ 6

Bernstein v. State,
411 N.J.Super. 316 (App.Div. 2010) ........................................................ 33, 34

Black by Black v. Indiana Area School Dist.,
985 F.2d 707 (3d Cir. 1993).......................................................................... 21

Bostic v. Smyrna Sch. Dist.,
418 F.3d 355 (3d Cir. 2005).......................................................................... 12

Bryson v. Diocese of Camden,
909 F. Supp. 2d 364 (D.N.J. 2012) .............................................................. 10

Buckelew v. Grossbard,
87 N.J. 512 (1981) ....................................................................................... 28

Buckeley v. Trenton Sav. Fund Soc'y,
111 N.J. 355 (1988) ..................................................................................... 32

Cavuoti v. N.J. Transit Corp.,
161 N.J. 107 (1999) ..................................................................................... 33

Chambers v. School Dist. Of Philadelphia,
587 F.3d 176 (3d Cir. 2009).......................................................................... 21

City of Canton, Ohio v. Harris,
489 U.S. 378. 109 S. Ct. 1197 (1989) ...................................................... 22, 23

City of Newport v. Fact Concerts,
453 U.S. 247 (1981) ..................................................................................... 33

City of Oklahoma City v. Tuttle,
471 U.S. 808 (1985) ..................................................................................... 20

County of Sacramento v. Lewis,
523 U.S. 833 (1998) ..................................................................................... 16

D.M. v. River Dell Regional High School,
373 N.J.Super. 639 (App. Div. 2004) ........................................................ 8

D.T. v. Hunterdon Medical Center,
2012 WL 4448774 (N.J.Super. App. Div. 2012) ........................................ 29

Davis v. Devereux Foundation,
209 N.J. 269 (2012) ..................................................................................... 29

Davis v. Monroe County Bd. of Educ.,
526 U.S. 629, 119 S.Ct. 1661, 1672, 143 L.Ed.2d 839 (1999)................... 12

DiCosala v. Kay,
91 N.J. 159 (1982) ....................................................................................... 29

Dipippa v. Union School Dist.,
819 F.Supp.2d 435 (W.D. Pa. 2011) ....................................................... 12, 19, 20

Farmer v. Brennan,
    511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ........................................................ 21
Filipowicz v. Diletto,
    350 N.J. Super. 552 (App.Div. 2002) ........................................................ 29
Fowler v. UPMC Shadyside,
    578 F. 3d 203 (3d Cir. 2009) ........................................................ 7
Franklin v. Gwinnett County Public School,
    503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ........................................................ 11
Garza v. Galena Park Independent School Dist.,
    914 F.Supp. 1437 (S.D. Texas 1994) ........................................................ 12
Gebser v. Lago Vista Independent School Dist.,
    524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) ........................................................ 11, 14
Genty v. Resolution Trust Corp.,
    937 F.2d 899 (3d Cir. 1991) ........................................................ 8
Gottlieb v. Laurel Highlands School Dist.,
    272 F.3d 168 (3d Cir. 2001) ........................................................ 21
Hafer v. Melo,
    112 S. Ct. 358 (1991) ........................................................ 19
Hayes v. Pittsgrove Twp. Bd. of Educ.,
    269 N.J.Super. 449 (App.Div. 1994) ........................................................ 34
Jackson v. Birmingham Bd. of Educ.,
    544 U.S. 167, 125 S.Ct. 1497 (2005) ........................................................ 11
Jerkins ex rel. Jerkins v. Anderson,
    191 N.J. 285 (2007) ........................................................ 29
Johnson v. Elm Lake School District,
    283 F.3d 138 (3d Cir. 2002) ........................................................ 21, 22
Jones v. Ewing Twp. Bd. of Educ.,
    2010 WL 4669875 (D.N.J. 2010) ........................................................ 19
Joyce v. City of Sea Isle City,
    2008 WL 906266 (D.N.J. 2008) ........................................................ 27
K.P. v. Corsey, III et al.,
    228 F.Supp.2d 547 (D.N.J. 2002),
    rev'd and remanded on other grounds, 2003 WL 22338566 (3d Cir. 2003) ................ 11, 16, 17
Kaucher v. County of Bucks,
    455 F.3d 418 (3d Cir. 2006) ........................................................ 19
Kentucky v. Graham,
    473 U.S. 159 (1985) ........................................................ 19
Kline v. Mansfield,
    255 Fed. Appx. 624 (3d Cir. 2007) ........................................................ 23
Kneipp v. Tedder,
    95 F.3d 1199 (3d Cir. 1996) ........................................................ 18, 21
Kollar v. Lozier,
    286 N.J.Super. 462 (App.Div.),
    certif. denied, 145 N.J. 373 (1996) ........................................................ 34
L.W. ex rel L.G. v. Tome River Regional Schools Bd. of Educ.,
    189 N.J. 381, 915 A.2d 535 (2007) ........................................................ 27

Leang v. Jersey City Bd. of Ed.,
198 N.J. 557 (2009) ............................................................................. 33

Leshki v. Servis,
423 F.3d 337 (3d Cir. 2005) .................................................................. 20

Lopez v. Swyer,
62 N.J. 267 (1973) ............................................................................... 10

Marion v. Bor. of Manasquan,
231 N.J.Super. 320 (App.Div. 1989) ..................................................... 33

Monell v. Department of Social Service of City of New York,
436 U.S. 658 (1978) ............................................................................. 20

Morse v. Lower Merion Sch. Dist.,
132 F.3d 902 (3d Cir. 1997) .................................................................. 16

Morse v. Lower Merion School Dist.,
132 F.3d 902 (3d Cir. 1997) .................................................................. 19

Murrell v. School Dist. No. 1, Denver, Colorado,
186 F.3d 1238 (10th Cir. 1999) ................................................ 12, 13, 16

O'Connor v. City of Newark,
440 F.3d 125 (3d Cir. 2006) .................................................................... 8

Papelino v. Albany College of Pharmacy of Union University,
633 F.3d 81 (2d Cir. 2011) ................................................................... 12

Phillips v. Cnty. of Allegheny,
515 F.3d 224 (3d Cir. 2008) .................................................................... 7

Phillips v. Gelpke,
190 N.J. 580 (2007) ................................................................................ 9

Polk County v. Dodson,
454 U.S. 312, 102 S.Ct. 445,
70 L.Ed.2d 509 (1981) ......................................................................... 20

Poveromo-Spring v. Exxon Corp.,
968 F.Supp. 219 (D.N.J. 1997) ............................................................... 8

R.L. v. Voytac,
199 N.J. 285 (2009) .............................................................................. 10

Rode v. Dellarciprete,
845 F. 2d 1195 (3d Cir. 1988) ............................................................... 16

Salerno v. O'Rourke,
555 F. Supp. 750 (D.N.J. 1983) ............................................................ 16

Stoneking v. Bradford Area School Dist.,
882 F.2d 720 (3d Cir. 1989),
cert. denied, 493 U.S. 1044 (1990) ....................................................... 21

Tarr v. Ciasulli,
181 N.J. 70, 853 A.2d 921 (2004) ................................................... 25, 26

Thorpe v. Cohen,
258 N.J.Super. 523 (App.Div. 1992) ..................................................... 34

Titus v. Lindberg,
49 N.J. 66 (1967) ................................................................................. 29

Van Engelen v. O'Leary,
   323 N.J. Super. 141 (App.Div.),
   certif. denied, 162 N.J. 486 (1999) ................................................................ 34
Ward v. Barnes,
   545 F.Supp.2d 400 (D.N.J. 2008) .................................................................. 32
Wilson v. Garcia,
   471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ................................... 8
Young v. Pleasant Valley School Dist.
   2010 WL 55711, *10 (M.D. Pa. 2010) .......................................................... 23

**Statutes**

42 U.S.C. § 1983 ............................................... 1, 2, 8, 10, 14, 24, 25
N.J.S.A. 10:5-12(a) ..................................................................................... 26
N.J.S.A. 10:5-5(e) ....................................................................................... 26
N.J.S.A. 18A:15-1 ....................................................................................... 26
N.J.S.A. 18A:17-15 to -24 ........................................................................... 26
N.J.S.A. 2A:14-2(a) ....................................................................................... 8
N.J.S.A. 59:2-10 .................................................................................... 31, 33
N.J.S.A. 59:2-2 ............................................................................................. 29
N.J.S.A. 59:3-14 ........................................................................................... 34
N.J.S.A. 59:9-2c ........................................................................................... 33
U.S.C. § 1681 ................................................................................................. 1

**Rules**

F.R.C.P. 5.2(a) (3) ....................................................................................... 35
F.R.E. 201(b)(2) and (c) ................................................................................ 9
Fed. R. Civ. P. 12(b)(6) ............................................... 1, 6, 7, 11, 31, 35

## PRELIMINARY STATEMENT

On August 29, 2014, plaintiffs, B.P. and K.P., commenced a civil action in the Superior Court of New Jersey, Law Division, Camden County, against Black Horse Pike Regional School District ("Board"), Ralph Ross ("Ross"), Frank Palatucci ("Palatucci"), Thomas Sullivan ("Sullivan"), and Anthony Williams ("Williams").  Thereafter, on October 24, 2014, the Board, Ross, Palatucci and Sullivan filed a Notice of Removal with the United States District Court, District of New Jersey.  The gravamen of the action is acts of alleged sexual harassment in 2007 of a student, B.P., committed by Williams who was employed as a social worker and counselor at the Highland Regional High School.  Although B.P. graduated high school in 2008,[1] an "inappropriate" relationship between Williams and B.P. continued through 2010.  The complaint purports to allege violations of B.P.'s federal civil rights in connection with the conduct of defendant Williams, particularly claims made pursuant to 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681, et seq., as well as certain state law claims.  B.P.'s mother, K.P., has also asserted individual state law claims against the defendants.

The Board, Ross, Palatucci, and Sullivan (hereinafter collectively referred to as "school defendants") hereby move pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the complaint for its failure to state a claim upon which relief can be granted pursuant to Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Dismissal is further necessary because plaintiffs' claims were not filed within the statute of limitations period.

B.P.'s federal claims are premised upon an alleged violation of his Fourteenth Amendment rights to due process and equal protection of the laws.  In Count I, the complaint purports to assert a claim under Title IX against the Board.  B.P. is further claiming, in Counts III

---

[1] B.P.'s date of birth is October 16, 1990.  Thus, the complaint alleges an inappropriate relationship that extended beyond B.P.'s majority.  See Exhibit "A."

and IV, violations of his civil rights under § 1983 against the Board and Ross, Palatucci and Sullivan in their individual and official capacities.[2] B.P.'s allegations, however, fail to provide specific facts of actual knowledge or deliberate indifference.

In Count V, B.P. alleges violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD"), which claim does not lie against the individuals as they are not employers under the statute and the facts do not support a claim against the Board.  Plaintiffs, B.P. and K.P., allege in Count VI that the Board negligently hired, supervised, trained, and retained Williams; and that it breached its *in loco parentis* duty to plaintiffs.  In Count VII, plaintiffs allege all individual defendants breached their common law duty to exercise reasonable care for B.P.'s protection.  Plaintiffs allege defendants' actions resulted in intentional and negligent infliction of emotional distress in Counts VIII and IX, respectively.  Finally, in the prayers for relief in each count, plaintiffs seek punitive damages, which claims do not lie against a public entity as a matter of law under federal or state law.

The complaint is utterly devoid of any factual specification that would enable one to ascertain what acts or omissions were supposedly committed that would expose the school defendants to liability.  Plaintiffs' allegations constitute mere conclusory statements and various "buzz words" without any specific factual support.  As no viable claims have been pled against defendants Board, Ross, Palatucci, and Sullivan, the complaint must be dismissed.

---

[2] Count II alleges a violation of B.P.'s civil rights under § 1983 against Williams in his individual capacity and, thus, will not be addressed in this motion.  Similarly, the allegations set forth against Williams in Counts V, VII, VIII, and IX will not be addressed.

## STATEMENT OF FACTS/PROCEDURAL HISTORY[3]

Commencing fall 2004, B.P. began receiving special education services[4] as a student at Highland Regional High School, which is a public school owned and operated by the Board. <u>See</u> complaint at ¶¶1, 3, 19, 21. The Board employed Ross as the superintendent; Palatucci as the high school principal; Sullivan as a high school teacher/supervisor of special education and child study team services; and Williams as a high school teacher/social worker and counselor. <u>Id</u>. at ¶¶4-7. In spring 2007, Williams was assigned as B.P.'s[5] counselor for special education support. <u>Id</u>. at ¶22. Shortly thereafter, Williams began exchanging text messages and telephoning B.P. frequently during and outside school hours. <u>Id</u>. at ¶¶24-25. Williams also invited and hosted B.P. at his home, including overnight, where Williams would masturbate in front of B.P. <u>Id</u>. at ¶¶26-29. This sexual conduct continued through the end of the 2006-2007 school year. <u>Id</u>. at ¶30.

During summer 2007, B.P. attended weekly private counseling sessions with Williams at the high school. <u>Id</u>. at ¶31. At this time, K.P., B.P.'s mother, learned that B.P. and other students visited Williams' home, which served no educational purpose. <u>Id</u>. at ¶¶32-34. Sometime thereafter, K.P. advised Williams that B.P. did not have her permission to visit his home and he should contact her if B.P. tried to visit him; however, Williams did not comply. <u>Id</u>. at ¶¶35-36. Thus, K.P. at some unspecified time notified Palatucci and Sullivan of her "concerns"[6] about B.P.'s visits to Williams' home to which Palatucci asked K.P. if she was accusing Williams of being gay. <u>Id</u>. at ¶¶37, 39. Palatucci and Sullivan told K.P. it was

---

[3] As the instant application is a motion to dismiss upon the pleadings, the following facts appear of record in the complaint filed by plaintiffs B.P. and K.P.

[4] The complaint does not specify the types of special education services B.P. received or whether he was a classified student and, if so, the nature of the classification.

[5] At this time, the 2006-2007 school year, B.P. was a junior in high school.

[6] These "concerns" did not include anything of a sexual nature as K.P. was admittedly unaware of any sexual conduct until 2013. <u>See</u> complaint at ¶¶86, 93.

common for Williams to host his counseling students at his home; they failed to investigate whether Williams and B.P. had an inappropriate relationship; they refused to transfer B.P. to another counselor and advised that B.P. would not receive counseling if Williams was not his counselor. Id. at ¶¶38, 40-43. During summer 2007, K.P. sought additional special education services for B.P. via administrative proceedings that resulted in a determination that for the 2007-2008 school year,[7] the Board was authorized to send B.P. to Brookfield Academy[8] for these services. Id. at ¶¶44-45.

While B.P. attended Brookfield Academy during his senior year, Williams and B.P. continued to have personal communications via text and telephone, particularly over the winter holidays between December 2007 and January 2008. Id. at ¶¶46-50. In a meeting in January or February 2008, K.P. brought eight pages of text messages between Williams and B.P. to Palatucci's and Sullivan's attention. Id. at ¶52. Sullivan allegedly threatened to withdraw all special services for B.P. and Palatucci allegedly became hostile, asked K.P. if she was accusing Williams of being gay, and advised that Williams had a right not to speak to K.P. about his communications with B.P. Id. at ¶¶53-55, 57. Notwithstanding, Palatucci and Sullivan investigated the matter by confronting Williams about the text messages to which he indicated that B.P. initiated the contact and was attempting to have an improper relationship. Id. at ¶¶58-59. Palatucci and Sullivan told K.P. she should stop B.P. from harassing Williams. Id. at ¶60.

In response, K.P. wrote letters with copies of the text messages to each of the nine Board members about the alleged "improper" relationship between Williams and B.P. The Board held a closed hearing in March or April 2008 regarding this issue. Id. at ¶¶62-63. At the hearing,

---

[7] B.P. was in his senior year of high school for the 2007-2008 school year.
[8] Brookfield Academy is an out-of-district private special education school that serves high school aged classified students with an Individual Education Plan ("IEP").

Palatucci blamed K.P. for B.P.'s visits to Williams' home and threatened to withdraw special education services for B.P.  Id. at ¶¶65-66.  Palatucci acknowledged that he and "other employees" knew Williams hosted B.P. at his home, but they did not report it to DYFS or law enforcement. Id. at ¶¶67-68. At the closed hearing the Board questioned K.P. about her inability to control her son, but did not question Williams' attorney about the alleged "inappropriate" relationship, including text messages or B.P.'s visits to Williams' home. Id. at ¶¶69-71. After the closed hearing, there was no further investigation of Williams' "inappropriate" relationship with B.P. and there were no steps put in place to ensure Williams would not have contact with B.P. Id. at ¶¶73-74. In spring 2008, Palatucci threatened to prosecute trespassing claims against B.P. for attending a talent show at the high school, and he prevented B.P. from attending his graduation ceremony at the high school in 2008. Id. at ¶¶75-79.

After B.P. graduated in 2008, Williams continued to have an "inappropriate" relationship with B.P. by sending frequent text messages throughout 2009 and into 2010. Id. at ¶¶80-81. In 2010, in part due to the "harassing presence" of Williams, plaintiffs moved to Maryland. Id. at ¶82. On a visit to New Jersey in October 2011, B.P. went to Williams' home. Id. at ¶83. Two years later, in September 2013, the Camden County Prosecutor's Office ("CCPO") contacted plaintiffs as part of an investigation regarding Williams' alleged sexual abuse of another teenage boy. Id. at ¶¶85, 89. On September 10, 2013, Williams was arrested for endangering the welfare of a child. Id. at ¶86. Williams pled guilty and, on December 13, 2013, was sentenced to 12 months of probation and forbidden to have contact with his victim. Id. at ¶88.

K.P. asserts that she did not know that Williams had allegedly sexually harassed B.P., masturbated in front of him, or exposed him to sexually explicit conduct until after Williams was arrested in 2013. Id. at ¶93. Plaintiffs allege that B.P.'s unspecified and unsupported emotional,

learning and cognitive difficulties supposedly prevented him from understanding the wrongful nature of Williams' conduct and caused him to repress the memory of Williams' conduct until after Williams was arrested and plaintiffs were contacted by the CCPO. Id. at ¶¶90-91. Plaintiffs further broadly contend they were unaware of the causal connection between their harm and the conduct by Williams' and the school defendants. Id. at ¶¶92, 94.

Plaintiffs assert that B.P. suffered extraordinary harm beginning in the Spring of 2007 due to repeated sexual harassment by Williams and the sexually hostile school environment created by all defendants. Id. at ¶¶9, 11, 95. B.P. has allegedly suffered unspecified psychiatric difficulties, mental anguish, emotional trauma and other forms of mental and physical pain and suffering that have adversely affected his education and earning capacity, and have resulted in medical expenses and other economic loss. Id. at ¶¶84, 95. K.P. also contends that she has individually been caused mental and physical injuries, and she incurred economic loss on behalf of herself and B.P. Id. at ¶¶12, 96.

## STANDARD OF REVIEW – RULE 12(b)(6)

The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Id. at 555 (internal citations omitted). Therefore, for a complaint to withstand a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Id. (internal citations and footnote omitted).

6

More recently, the Supreme Court in Ashcroft v. Iqbal, supra reviewed the standard under Rule 12(b)(6). The Court emphasized that when assessing the sufficiency of a civil complaint, as here, the District Court must distinguish between factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, supra, 556 U.S. at 678. A complaint shall be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ibid. (quoting Twombly, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F. 3d 203, 211 (3d Cir. 2009) (citations omitted).

Applying the principles of Iqbal, the Third Circuit in Fowler articulated a two-part analysis that the District Court should conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210–11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quotations and citations omitted).

In this matter, plaintiffs' complaint consists of bare labels, conclusions, and formulaic recitations of the elements of a cause of action using various "buzz words" to lure the court into

believing the complaint can state a claim for relief. However, the complaint is void of any factual allegations that express entitlement to relief. Since the complaint fails to demonstrate any plausible cause of action against the school defendants, the complaint must be dismissed.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS AND MUST BE DISMISSED**

Plaintiffs failed to file their complaint within two years of B.P. reaching the age of majority; thus, the complaint must be dismissed with prejudice. "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued". N.J.S.A. 2A:14-2(a). In addition to applying to common-law personal injury claims, D.M. v. River Dell Regional High School, 373 N.J.Super. 639, 650 (App. Div. 2004), this two-year statute of limitations applies to federal civil rights actions, O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006), Wilson v. Garcia, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and LAD claims, Poveromo-Spring v. Exxon Corp., 968 F.Supp. 219, 224-25 (D.N.J. 1997). The limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Also, the time limitation will be tolled until the person reaches the age of 18 years. N.J.S.A. 2A:14-21.

The complaint alleges violations of B.P.'s civil rights under § 1983 and Title IX; a hostile educational environment under LAD; and state common-law personal injury claims against the school defendants premised upon Williams' alleged sexual harassment of B.P. while he was a high school student. Beginning spring 2007, B.P. alleges that he suffered extraordinary harm

8

due to the sexual harassment and hostile environment. See complaint at ¶9. Plaintiff's mother K.P. raised concerns about B.P.'s "inappropriate" relationship in summer 2007 and spring 2008. Id. at ¶¶31-37, 52, 62-63. Thus, plaintiffs were aware of the injury and causal link to the harassment seven years ago. However, plaintiffs did not file a complaint until August 29, 2014. Although the complaint is intentionally silent as to B.P.'s birthdate to conceal the obvious statute issue, the court can reasonably infer that B.P. was at least 17 years old at the time of graduation in 2008; thus, B.P. would have turned 18 in 2009, at the latest, and the statute of limitations would have expired in 2011. In any event, pursuant to F.R.E. 201(b)(2) and (c), the Court must take judicial notice of the fact that B.P.'s date of birth is October 16, 1990.[9] Since the complaint was filed more than two years after B.P. reached 18, the age of majority, it was not filed within the statute of limitations and must be dismissed with prejudiced.

Defendants acknowledge that plaintiffs feebly seek to toll the statute of limitations on the basis of a B.P.'s mental state by broadly alleging that due to "emotional, learning and cognitive difficulties" B.P. "repressed" the memories of the sexual harassment and harm he suffered until after Williams was arrested in September 2013. Id. at ¶¶86-92. This conclusory assertion, devoid of any factual support however, is insufficient to justify any tolling. Generally, plaintiffs must articulate and describe why the memory could not have been recalled and why they reasonably could not comply with the limitation period. Phillips v. Gelpke, 190 N.J. 580, 595 (2007). In childhood sexual assault cases, as alleged here, that standard is not met by an "I forgot" explanation; rather, real evidence is needed to toll statute of limitations based on repressed factual elements of alleged sexual assault. Id. at 595-96. Here, there is no evidence, no expert opinion disclosed or mentioned to support the repressed memory theory and the facts

---

[9] B.P.'s date of birth is found, for example, upon his final school transcript from the Black Horse Pike Reg. School Dist. Exhibit "A."

as pled in the complaint do not provide a <u>prima facie</u> showing that B.P.'s nondescript mental state entitles plaintiffs to have the statute of limitations tolled.  Thus, the complaint must be dismissed with prejudice.[10]

## POINT II

**THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO THE FEDERAL CLAIMS UNDER TITLE IX AND SECTION 1983 AGAINST THE SCHOOL DEFENDANTS AND MUST BE DISMISSED**

B.P. seeks damages for an alleged violation of his constitutional rights by the Board through application of Title IX, 20 U.S.C. § 1681, <u>et</u> <u>seq</u>. in Count I and 42 U.S.C. § 1983 in Count IV.  He also seeks damages for a violation of his rights pursuant to 42 U.S.C. § 1983 by Ross, Palatucci and Sullivan in both their individual and official capacities in Counts III and IV, respectively.  The school defendants submit that B.P. has failed to state a cause for action upon which relief can be granted as to each such count and, therefore, all federal claims against them must be dismissed.

### a.    Title IX, 20 U.S.C. § 1681, <u>et</u> <u>seq</u>.

Count I purports to allege violations of Title IX, 20 U.S.C. § 1681, <u>et</u> <u>seq</u>. on the basis that the Board allegedly permitted B.P. to be sexually harassed within the school environment. B.P. claims that Ross and Palatucci were "appropriate persons" who had "actual notice" that Williams was sexually harassing B.P.; yet, they acted with "deliberate indifference" to the "improper relationship" resulting in a "severe, pervasive and persistent sexually hostile educational environment" resulting in physical and emotional harm to B.P.  <u>See</u> complaint at

---

[10] If there is any question of fact as to whether the statute of limitation can be tolled, the court should bifurcate discovery on the issue and hold a preliminary hearing where the plaintiffs have the burden of proof and persuasion.  <u>Lopez v. Swyer</u>, 62 N.J. 267, 275-76 (1973); <u>R.L. v. Voytac</u>, 199 N.J. 285, 297-302 (2009).  Defendants submit that no such facts, as opposed to conclusions, have been pled to warrant a <u>Lopez</u> hearing in this matter.  <u>Bryson v. Diocese of Camden</u>, 909 F. Supp. 2d 364 (D.N.J. 2012).

¶¶100-104. Specifically, B.P. claims that Ross and Palatucci declined to conduct or obstructed a meaningful investigation of the improper relationship; failed to have an adequate policy or failed to adhere to an inadequate policy to address sexual harassment; and failed to discipline teachers for inappropriate conduct with students thereby condoning the inappropriate relationship. Id. at ¶103. For the following reasons, B.P. has failed to state a claim for relief under Title IX and, therefore, Count I should be dismissed pursuant to Rule 12(b)(6).

Title IX broadly prohibits discrimination by a funding recipient on the basis of sex. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173, 125 S.Ct. 1497 (2005) (citing 20 U.S.C. § 1681(a)). Section 901(a) of Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.  20 U.S.C. § 1681(a).

A board of education can be liable under Title IX in cases involving a teacher's sexual harassment of a student under certain circumstances. K.P. v. Corsey, III et al., 228 F.Supp.2d 547, 550 (D.N.J. 2002), rev'd and remanded on other grounds, 2003 WL 22338566 (3d Cir. 2003) (citing Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 281, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)); see also Franklin v. Gwinnett County Public School, 503 U.S. 60, 74-75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).  Notably, the Supreme Court has specifically rejected agency principles such as *respondeat superior*, as well as constructive notice when determining board of education liability in Title IX cases. Gebser, 524 U.S. at 285, 292-293.

In order for plaintiff to establish liability against the Board, B.P. must show that an "appropriate person" had actual knowledge of the harassment and "the authority to take corrective action [; yet,] responded to the harassment with deliberate indifference." Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 257, 129 S.Ct. 788 (2009) (citing Gebser, supra.).

11

The Board's response to the harassment must be "clearly unreasonable" in light of the known circumstances. Papelino v. Albany College of Pharmacy of Union University, 633 F.3d 81, 89 (2d Cir. 2011) (citing Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)). Thus, liability will only attach where the recipient of the Federal funds "exercises substantial control over both the harasser and the context in which the known harassment occurs." Murrell v. School Dist. No. 1, Denver, Colorado, 186 F.3d 1238, 1246 (10th Cir. 1999) (quoting Davis, supra.).

   A board of education will not be liable where it could not have remedied the harassment because it had no knowledge of it or lacked the authority to respond to the harassment. Id. Actual notice means nothing less than actual knowledge of the harassment or discrimination within the board of education's programs. Dipippa v. Union School Dist., 819 F.Supp.2d 435, 447 (W.D. Pa. 2011). "Knowledge of the mere possibility of harassment is insufficient to constitute awareness. . . ." Id. (citing Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005)). Plaintiff must allege knowledge of specific underlying facts indicating sufficiently substantial danger to the student and thus awareness of the danger. Id. Further, boilerplate "[a]llegations that the school district knew or should have known of the harassment and failed to take appropriate corrective action are insufficient." Garza v. Galena Park Independent School Dist., 914 F.Supp. 1437, 1438 (S.D. Texas 1994). When considering deliberate indifference to the harassment, it is essentially an "official decision by the recipient not to remedy the violation." Dipippa, 819 F.Supp.2d at 447 (citing Bostic, supra.).

   Accordingly, to state a claim for relief under Title IX, the complaint must factually show that (1) an appropriate person at the board of education with the ability to correct any harassment (2) had actual knowledge of, and (3) was deliberately indifferent to (4) harassment of plaintiff

12

that was so severe, pervasive and objectively offensive, that it (5) deprived plaintiff of the school's educational benefits or opportunities. Murrell, 186 F.3d at 1246. Accepting all of the meager facts within B.P.'s complaint as true, defendants submit that plaintiff cannot meet these strict standards to impose Title IX liability upon the Board. More specifically, plaintiff has failed to advance any factual allegations, as opposed to legal conclusions, of actual knowledge on the part of the Board or its administrators of sexual harassment of B.P. by Williams; that the Board's response to the known harassment was deliberately indifferent; the harassment occurred in a context under the Board's control; and it deprived B.P. of any educational benefits.

Ross, as superintendent, and Palatucci, as principal, are appropriate persons for Title IX. However, the complaint fails to plead any facts that either of these individuals had actual knowledge that Williams sexually harassed B.P. Although the complaint states that in or about summer 2007, K.P. advised Palatucci that B.P. visited Williams' home, see complaint at ¶37, and in January or February 2008, K.P. brought eight pages of nondescript text messages between Williams and B.P. to Palatucci's attention, id. at ¶52, this does not constitute actual notice that Williams was sexually harassing B.P. in his home. In fact, the complaint is premised upon a claim that K.P. was not aware of any actual sexual harassment of B.P. until after Williams was arrested in September 2013, id. at ¶93, so as to circumvent the limitations bar; thus, she could not have notified Palatucci of sexual harassment in 2007-2008. She cannot have the issue both ways. The facts also show that the alleged sexual harassment did not take place in school or continue into B.P.'s senior year of high school. Indeed, B.P. did not even attend school in the District at this time. He was in Brookfield Academy. Aside from alleged threats to withdraw special education services, there are no facts that this occurred or that B.P. was deprived of educational services at Brookfield.

13

Plaintiff's complaint merely sets forth allegations of the legal elements of a Title IX cause of action, though the assertions are not plausible. As detailed herein, B.P. has failed to show any facts to suggest actual knowledge of the alleged sexual harassment, see Gebser, supra, 524 U.S. 274 (the principal had no knowledge of the teacher's sexual relationship with the plaintiff; thus, the school district did not have actual notice of the harassment), or any of the other elements. Accordingly, given the complaint's lack of a factual specificity, Count I fails to state a claim upon which relief can be granted and must be dismissed.

    b.    **42 U.S.C. § 1983**

Count III purports to allege claims under § 1983 against Ross, Palatucci, and Sullivan, in their individual capacities for violation of B.P.'s rights to due process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution based upon his gender as a male student. See complaint at ¶¶127-132. B.P. alleges that Ross, Palatucci and Sullivan "acted under color of state law" and violated B.P.'s civil rights when they turned a blind eye to Williams' improper relationship with B.P. by failing to report and/or investigate the improper relationship; and failing to supervise Williams and other Board employees. Id. at ¶¶120-123. These failures are alleged to be so egregious and outrageous that they can be said to "shock the contemporary conscience." Id. at ¶124. Further, B.P. claims their conduct "affirmatively enabled and facilitated" Williams' improper relationship with B.P. and it constitutes a state-created danger. Id. at ¶125.

In Count IV, B.P. asserts claims under § 1983 against the Board, Ross, Palatucci, and Sullivan in their official capacities due to inadequate policies regarding sexual harassment and child sexual abuse; a pervasive custom and practice of ignoring the inadequate policies; and a failure to train and supervise employees regarding sexual harassment and child sexual abuse. Id. at ¶135. More specifically, plaintiff alleges the Board had inadequate policies governing the

student-teacher relationship with respect to improper communications, such as text messaging; and improper and sexual relationships. Id. at ¶¶136-144. Yet no such policy is identified. B.P. also asserts the Board had a widespread "custom and practice" having the "force of law" of deliberately tolerating improper relationships between students and teachers as teachers did not face any discipline when they engaged in behavior with students outside the normal student-teacher relationship. Id. at ¶¶145-148. This custom and practice allegedly created a climate where inappropriate relationships were enabled and, thus, contributed and/or caused Williams' inappropriate relationship with B.P. and the individual school defendants' condonation of the relationship. Id. at ¶¶149-151. Further, B.P. claims the Board failed to train its employees regarding proper boundaries between students and teachers, and investigating and responding to inappropriate contact and/or allegations of sexual harassment. Id. at ¶¶152-156. B.P. asserts that the need for training was so obvious that the Board was "deliberately indifferent" to it. Id. at ¶157.

Plaintiff once again merely advances conclusory statements and various "buzz words" such as "deliberately indifferent," "custom and practice," and "shocks the conscience." The complaint lacks any factual basis, however, to sustain a cause of action for individual liability against Ross, Palatucci and Sullivan, and there is no factual predicate for liability against the Board based upon a policy, practice or custom. Plaintiff's conclusory allegations are insufficient to state a claim for relief under § 1983 and, therefore, Counts III and IV must be dismissed.

### 1.    Individual Claims – Count III

Section 1983, in pertinent part, states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities

15

secured by the Constitution and laws, shall be liable to the party
injured in an action at law.... 42 U.S.C. § 1983.

To establish that a specific defendant, acting under color of state law, violated a federally

secured right, the claimant must demonstrate that the specific defendant deprived them of such

right as charged in the complaint. Salerno v. O'Rourke, 555 F.Supp. 750, 757 (D.N.J. 1983).

Indeed, B.P. is obligated to identify the exact contours of the underlying right said to have been

violated and, specifically, for each individual defendant. County of Sacramento v. Lewis, 523

U.S. 833, 841 & n.5 (1998). "[A] defendant in a [§ 1983] action must have personal

involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988).

By itself, of course, § 1983 does not create any rights. Instead, it merely provides a vehicle or

remedy for violations of rights created by the Constitution or under federal law. Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997). Further, for any individual liability to

be established upon the Board's employees, plaintiff must demonstrate that the particular

individual was a supervisor (an official with final authority to establish policy) who acted with

deliberate indifference to, or conscious acquiescence in known sexual harassment. Murrell, 180

F.3d at 1250; K.P. v. Corsey, III, 228 F.Supp.2d at 552. Thus, in order to state a claim under §

1983, B.P. must state facts sufficient to allege that each of the individually named defendants

was a supervisor with final authority to establish policy and actually knew of and acquiesced in

Williams' conduct. B.P. must show each defendant was personally involved.

    With respect to Ross, the complaint conclusively asserts that he "knew or should have

known" about the improper relationship between Williams and B.P., he "actively frustrated"

K.P.'s efforts to prompt an investigation, failed to ensure a meaningful investigation took place,

and turned a blind eye to Williams' improper relationship. See complaint at ¶¶13-14, 123.

However, Iqbal instructs that such formulaic recitations are no substitute for a minimal factual

basis for a claim. Nowhere does the complaint contain a single factual allegation that Ross received a complaint from plaintiff, his mother, or any other person of any inappropriate conduct by Williams toward B.P. There is no allegation of any factual context by which Ross acted with deliberate indifference to an alleged inappropriate relationship. See Baker v. Monroe Twp., 50 F.3d 1186, 1194 & n.5 (3d Cir. 1995). Thus, Count III of the complaint fails to set forth a claim upon which relief can be granted as to Ross.

Though Sullivan was a supervisor of special education and child study team services, he was a teacher, similar to Williams, see complaint at ¶¶6-7, and has not been pled factually to have had policy-making authority to be liable under § 1983. See K.P., 228 F.Supp.2d at 552. Even if he could be considered a supervisor, the complaint is utterly devoid of any factual basis to establish individual liability against him, or Palatucci for that matter. The complaint fails to set forth factual assertions of their personal involvement or wrongdoing in the conduct underlying the action, let alone conduct that led to the deprivation of B.P.'s constitutional rights. There are no facts pled to show that Palatucci or Sullivan had actual knowledge of sexual misconduct by Williams. The facts as pled simply show that in summer 2007, they knew that Williams hosted B.P., similar to other counseling students, at his home; and in early 2008 they knew about nondescript text messages between Williams and B.P. See complaint at ¶¶37, 52. Although plaintiffs may disagree with the adequacy of the steps taken once they learned of the information, which according to plaintiffs' own complaint made no mention whatsoever of any sexual misconduct, for the 2007-2008 school year B.P. was sent to Brookfield Academy, id. at ¶45; thus, he is not alleged to attend counseling or have had any contact with Williams within the school setting. In addition, Palatucci and Sullivan investigated the relationship and confronted

Williams about the text messages once brought to their attention. Id. at ¶59. Such actions cannot be said to be deliberately indifferent.

Notably, the facts reflect that any sexual conduct occurred at Williams' home from spring 2007 until the end of that school year, prior to any reports being made by K.P. concerning an alleged "inappropriate relationship." Id. at ¶¶22, 29-30. Subsequent to the reports, there are no facts to show B.P. was deprived his constitutional rights to due process or equal protection, particularly due to Palatucci's or Sullivan's actions. Rather, the facts as pled simply show that Williams and B.P. communicated via telephone and text in December 2007 and January 2008; they texted in 2009 and 2010, after B.P. graduated and was an adult; and B.P. visited Williams' home in October 2011, again, when he was 21 years old. Id. at ¶¶46-50, 80-83. Any alleged failure to supervise Williams or to investigate the relationship, id. at ¶122, has absolutely no factual causal link to B.P.'s claimed constitutional violations. There are simply no facts pled to show that Palatucci or Sullivan had knowledge of any sexual harassment by Williams; that they acted with deliberate indifference to it; and their personal actions resulted in a deprivation of B.P.'s constitutional rights. Accordingly, B.P. cannot assert individual claims under § 1983 against Palatucci and Sullivan; thus, Count III must be dismissed.

B.P.'s conclusory allegation of a "state-created danger" equally lacks factual merit to sustain a cause of action against Ross, Palatucci and/or Sullivan. The "state-created danger" imposes "an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury." Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013) (citing Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir. 1996)). To state a claim under this theory, plaintiff must adequately plead facts to demonstrate the following: (1) the harm ultimately caused was foreseeable and a direct result of the state's actions; (2) the state actor acted with a

18

degree of culpability that shocks the conscience; (3) a relationship exists between the state and plaintiff to the extent that plaintiff was a foreseeable victim or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor affirmatively used his or her authority in a way that created a danger to plaintiff or rendered plaintiff more vulnerable to the danger. Jones v. Ewing Twp. Bd. of Educ., 2010 WL 4669875 (D.N.J. 2010) (citing Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir. 2006)). The Third Circuit also employs a "deliberate indifference" standard for purposes of determining whether liability attaches under the state-created danger theory. Morse, 132 F.3d at 908. Here, the complaint simply pleads conclusory statements for the elements for the cause of action, see complaint at 125, without any factual support to show that the sexual assault was foreseeable and a direct result of Ross', Palatucci's or Sullivan's actions; the individual defendants performed any affirmative acts (as opposed to an alleged failure to investigate or supervise) that made B.P. more vulnerable to sexual assault; or that the individual defendants' actions could be said to shock the conscience. Thus, the record is devoid of any facts that constitute a state-created danger and Count III must be dismissed in its entirety.

### 2.    Official Capacity/Board Claims – Count IV

Naming the three individuals in their official capacities is the legal equivalent of naming the governmental entity, here the Board, itself as the defendant. See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358 (1991); Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985). Plaintiff's official capacity allegations set forth against Ross, Palatucci and Sullivan in Count IV are thus entirely superfluous. Therefore, Count IV against the individual defendants in their official capacities must be dismissed.

A governmental entity sued under §1983, cannot be held liable simply because it employs an alleged tortfeasor, such as Williams. Dipippa, 819 F.Supp. at 441. There is no governmental

liability based upon the doctrine of *respondeat superior*. <u>Monell v. Department of Social Service of City of New York</u>, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). A local governmental entity can be held liable only where the alleged unconstitutional conduct of a public employee executes or implements a policy or governmental custom; the individual's conduct must be "fairly attributable to the State." <u>Leshki v. Servis</u>, 423 F.3d 337, 342 (3d Cir. 2005).

The Supreme Court in <u>Monell</u> held a municipality can only be sued for damages where:

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's decision making channels. 436 U.S. at 690-691.

In other words, only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the governmental entity is responsible under § 1983." <u>Id</u>. at 694. The offending municipal policy must be "the moving force of the constitutional violation." <u>Polk County v. Dodson</u>, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Moreover, proof of a single incident of unconstitutional activity by a municipal employee is insufficient to impose liability under <u>Monell</u>, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-824 (1985).

Succinctly stated, for a board of education to be liable under § 1983 for the sexual abuse of a student by one of its teachers, plaintiff must demonstrate that the Board: "(1) had a policy, practice, or custom which played an affirmative role in bringing about the sexual abuse, and (2) that the school district acted with deliberate indifference to that abuse." <u>Dipippa</u>, 819 F.Supp.2d

20

at 441 (citing <u>Black by Black v. Indiana Area School Dist.</u>, 985 F.2d 707, 712 (3d Cir. 1993)). The standard for determining whether a school district had a policy, custom and practice resulting in a constitutional violation at issue in this matter has been described as follows: "'Although the mere failure of supervisory officials to act or investigate cannot be the basis of liability,' school officials may not 'maintain a custom, practice or usage that communicates condonation or authorization of assaultive behavior.'" <u>Id.</u> (citing <u>Stoneking v. Bradford Area School Dist.</u>, 882 F.2d 720, 730 (3d Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1044 (1990)). Further, plaintiff must show that a final policymaker of the district (an official who has final unreviewable discretion to make a decision or take action) had actual knowledge of similar conduct in the past and acted with deliberate indifference thereto. <u>Id.</u> at 442 (citing <u>Gottlieb v. Laurel Highlands School Dist.</u>, 272 F.3d 168, 176 (3d Cir. 2001), <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84, (1986), and <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996)). "If an employee's action is subject to discretionary review, the employee is not a final policymaker under § 1983." <u>Id.</u> at 443 (citing <u>Brennan v. Norton</u>, 350 F.3d 399, 428 (3d Cir. 2003)).

Deliberate indifference is an extremely high standard and a showing of basic or heightened negligence will not suffice. <u>Chambers v. School Dist. of Philadelphia</u>, 587 F.3d 176, 193 (3d Cir. 2009); <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred." <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 137 (3d Cir. 2001). In <u>Johnson v. Elm Lake School District</u>, 283 F.3d 138 (3d Cir. 2002), where the victim of alleged abuse by a teacher sought relief under § 1983 based upon the school administration's "policy or custom," the Third Circuit noted that the complainant "presented no credible evidence demonstrating that school officials knew of the alleged risk of

sexual abuse posed by [the teacher]" before the injury occurred, and "therefore . . . failed to establish . . . that her injuries were caused by a 'policy or custom' of the Administration." Id. at 144 n.1 (citing Beers-Capitol, 256 F.3d at 137).

Plaintiff's theories of liability under § 1983 are as follows: (1) failure to train and/or supervise its employees regarding sexual harassment and proper student-teacher relationships; (2) inadequate policies; and (3) a custom and practice of ignoring the inadequate policies, regarding sexual harassment and inappropriate student-teacher conduct. See complaint, ¶¶135-157. Notably, there is not a single factual allegation advanced in support of these theories. Plaintiffs have not presented any facts that a final policymaking official had any knowledge of similar conduct in the past or knowledge of a known risk of sexual haarassment to the male students, and that the final policymaking official acted deliberately indifferent to it. Once again, plaintiff has simply alleged conclusory statements warranting dismissal of the claim.

   c.   **Failure to Train**

B.P. claims that without training on inappropriate student-teacher relationships and sexual harassment, it was likely that an improper relationship would result and a failure to provide training constituted deliberate indifference. This assertion, however, has no merit. In City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989), the Supreme Court explained that "Monell's rule that a [governmental entity] is not liable under § 1983 unless a . . . policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees . . . represents a policy for which the [governmental entity] is responsible." 489 U.S. at 389. Instead, an entity's failure to train its employees in a relevant respect can result in liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." Id. at 388-89. The Court further explained that the failure to train or instruct must reflect "a 'deliberate'

or 'conscious' choice by a[n entity]—a 'policy' as defined by our prior cases—[to be held] liable for such a failure under § 1983." Id. at 389.

The Supreme Court stated that a governmental entity can be liable for failure to instruct only when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." Id. at 390. Here, the need for training is not so obvious. Providing no training to teachers and administrators regarding refraining from illegal, inappropriate contact and relationships with a student, as plaintiff has alleged, cannot fairly be characterized as likely to result in sexual abuse. In fact, "[t]he offending conduct here . . . is the sort of behavior that is so obviously wrong and contrary to right that an ordinary person could recognize it as inappropriate even without any additional training." Young v. Pleasant Valley School Dist., 2010 WL 55711 at *10 (M.D. Pa. 2010). Moreover, the Third Circuit has addressed plaintiff's theory in Kline v. Mansfield, 255 Fed. Appx. 624, 639, 2007 WL 4171108, 230 Ed. Law Rep. 183 (3d Cir. 2007), finding that "because not committing the crime of sexually abusing a child is obvious, the failure of [the school] to train its employees to spot signs of sexual abuse . . . was not deliberately indifferent." Accordingly, failing to provide instruction and education on inappropriate student-teacher relationships "would not obviously lead to a constitutional violation and does not constitute deliberate indifference." See id. Additionally, there are no facts that any student-teacher sexual harassment occurred prior to the Williams and B.P. situation to indicate that any specific, targeted training was necessary or that the Board was deliberately indifferent to any prior sexual harassment in the district. Therefore, plaintiff's theory that the Board is liable under § 1983 for a failure to

train teachers and administrators on inappropriate student-teacher conduct falls short and must be dismissed.

### d.    Policy, Practice, or Custom

Plaintiffs generally allege that the Board had inadequate polices; however, plaintiffs do not identify these "policies" and fail to present any facts to show that the alleged unconstitutional conduct was a result of an implementation of the policies or that they were the moving force behind the alleged sexual harassment.    Further, B.P. asserts that a custom and practice of tolerating improper relationships between teachers and students existed without any discipline, which created a climate where the behavior was enabled.    Yet there are no instances of such "toleration" alleged.    Specifically, B.P. asserts that Ross, Palatucci and Sullivan turned a blind eye to Williams' conduct in the present case.    Though couched in creative assertions, plaintiff's claim boils down to a failure to investigate an alleged inappropriate student-teacher relationship, which is insufficient to impose a Monell claim under § 1983 against the Board.

There are no facts pled that teachers and students frequently exchanged text messages or engaged in social relationships; no facts that a final policymaker, such as Ross or the Board members/president, was aware of such actions and acted deliberately indifferent to same; and a showing that the actions resulted in sexual harassment to a student.    Critically, plaintiff has failed to plead any facts in the complaint to show that a final policymaker, knew of the alleged risk of sexual harassment posed by Williams at any time before B.P. allegedly sustained injury.    The complaint is completely silent as to any factual basis by which the Board supposedly had actual knowledge of Williams' sexual harassment of B.P., or any other student, that would cause defendants to take any action to remedy it.    In fact, the facts as pled reflect that the sexual harassment was never brought to defendants' attention.    The only actions presented are that after the alleged harassment, Williams entertained B.P. at his home and they exchanged text

24

messages, messages that plaintiffs do not even allege demonstrate an illegal sexual relationship or behavior. This information was brought to the Board's attention and B.P. was placed in a different school for his senior year, away from day to day contact with Williams; and Palatucci questioned Williams about the text messages. Though plaintiff may disagree with the course of action, the Board's actions reflect that it did not act with deliberate indifference.

Simply put, plaintiff has only presented bald conclusory assertions without factual support to show a custom or practice of tolerating inappropriate relationships or sexual harassment existed and led to B.P.'s injury. Therefore, plaintiff cannot assert a Monell § 1983 claim against the Board, and Count IV must be dismissed.

## POINT III

### PLAINTIFF'S COMPLAINT DOES NOT MAKE A PRIMA FACIE SHOWING FOR VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION REQUIRING DISMISSAL OF THIS CLAIM

In Count V of the complaint, B.P. asserts liability against the Board, Ross, Palatucci, Sullivan and Williams under the LAD, N.J.S.A. 10:5-1, et seq. This Count fails to state a claim upon which relief can be granted because the individual school defendants are not "employers" within the intendment of the LAD and plaintiff has not pled facts sufficient to make a prima facie showing of liability against the Board. Thus, all claims in Count V must be dismissed.

The Supreme Court has made clear that the LAD prohibits unlawful employment practices and/or discrimination by employers – not individual supervisors or other employees. Tarr v. Ciasulli, 181 N.J. 70, 82-83, 853 A.2d 921 (2004). In Tarr, the claimant was an employee of a corporation owned by the individual defendant, Ciasulli, who was her ultimate supervisor. Tarr was subjected to pervasive sexual harassment that was not abated despite complaint. The Appellate Division had held Ciasulli could be individually liable under the LAD for having been negligent in the implementation of workplace programs and policies reasonably

25

calculated to prevent such sexual harassment. Id. at 82. The Supreme Court reversed and held that while Ciasulli may have been Tarr's ultimate supervisor, he could not have individual liability under the LAD because he was not the employer. Plaintiff's claim was accordingly limited to the corporate employer.

As indicated in Tarr, N.J.S.A. 10:5-12(a) declares unlawful discrimination by an "employer" based upon sex or gender. Under the statute, an "employer" includes "the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies." N.J.S.A. 10:5-5(e). Thus, a political subdivision of the State, such as a local board of education, is an employer under the LAD. However, a teacher, high school principal, and superintendent are not officers of the board of education. Rather, they are contracted employees of the board of education, albeit, with some holding supervisory positions at the building and district level. See generally, N.J.S.A. 18A:17-15 to -24 (superintendents); and N.J.S.A. 18A:15-1 (specifying president and vice president as officers of board of education).

Applying these principles to the instant case, it is plain that plaintiff does not have a cause for action against Ross, Palatucci, and Sullivan under the LAD. In fact, the complaint does not even allege they were employers; rather, it specifies that they are employees of the Board, similar to Williams. See complaint at ¶161. Just as Ciasulli was Tarr's supervisor, but not her employer, similarly, the individual school defendants are not the "employer" within the intendment of the LAD and, thus, have no individual liability. See Tarr, supra. Accordingly, Count V must be dismissed as to these individual defendants.

Plaintiff's claim under the LAD against the Board is similarly deficient as the facts do not support such a claim. To state a claim under the LAD, "an aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected

26

characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct." L.W. ex rel L.G. v. Toms River Regional Schools Bd. of Educ., 189 N.J. 381, 402, 915 A.2d 535 (2007). A school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination. Joyce v. City of Sea Isle City, 2008 WL 906266 at *3 (D.N.J. 2008) (citing L.W., 915 A.2d at 548). The reasonableness of the school's response to the harassment must be evaluated in light of the totality of the circumstances. Id.

Here, there are no facts to show that the Board or any of Williams' supervisors were aware, or should have been aware, of any discriminatory sexual harassment in the school at any time, let alone prior to spring 2007 when it is alleged to have occurred. Plaintiff simply alleges that after the sexual harassment took place at Williams' home, defendants failed to investigate B.P.'s prior visits to Williams' home and some later text messaging which plaintiffs do not even allege to be sexually inappropriate in contact or tone. The facts reflect that despite not having knowledge or any reason to know of sexual harassment of B.P., for the 2007-2008 school year B.P. attended Brookfield Academy out of district. There is not alleged to be any contact between Williams and B.P. in the school environment. Still, within that school year, Williams was confronted with the text messages by Palatucci and Sullivan so even that one fact was not ignored. Notably, the facts also show that the sexual harassment was neither severe nor pervasive as it did not continue past the few months in 2007. Nothing more occurred after the text messages were addressed in early 2008. Simply put, there are no facts to show that the

27

Board failed to take action to stop severe and pervasive sexual harassment or that B.P. was subjected to a hostile school environment. On its face, the complaint fails to assert factual allegations to state a claim against the Board under the LAD and, thus, Count V must be dismissed.

**POINT IV**

**PLAINTIFFS' STATE LAW NEGLIGENCE CLAIMS LACK ANY FACTUAL SPECIFICITY AND ARE, THUS, INSUFFICIENT TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6)**

Counts VI, VII, and IX of the complaint purport to assert state law claims against the Board, Ross, Palatucci, and Sullivan. Specifically, in Count VI, plaintiffs allege the Board breached its duty of care to act in loco parentis and protect B.P. from sexual harassment by Williams; and the Board negligently hired, retained and supervised Williams. In Count VII, plaintiffs assert Ross, Palatucci, and Sullivan breached their common law duty to exercise reasonable care and protect B.P. from sexual abuse. Finally, in Count IX, plaintiffs allege negligent infliction of emotional distress against the school defendants. As detailed above in the examination of B.P.'s defective federal claims, these state law claims all suffer from the same deficiency: they are mere formulaic recitations of negligence based state law causes of action but, once stripped of the conclusory allegations of law, fail to set forth any plausible claim for relief. Similarly, K.P. has not pled any facts to show how the school defendants can be liable to her under any state law negligence claims. Accordingly, any individual claims on behalf of K.P. must be dismissed for failure to state a claim upon which relief can be granted.

There is a presumption against negligence and plaintiff has the burden of proving negligence. Buckelew v. Grossbard, 87 N.J. 512, 525 (1981). It is axiomatic that a claim for negligence is comprised of four essential elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages suffered by the plaintiff. Filipowicz v. Diletto, 350 N.J.

Super. 552, 558 (App. Div. 2002).   Although the school defendants stand in the shoes of the parents while the student is present at school, the relationship of *in loco parentis* does not impose a non-delegable duty of care that would warrant imposition of liability for unexpected sexual misconduct by a teacher, particularly for acts that occurred off school premises.   See Davis v. Devereux Foundation, 209 N.J. 269, 277-278 (2012).   Rather, the Supreme Court of New Jersey has "consistently applied traditional principles of due care and foreseeability to cases involving *in loco parentis* relationship." Id. at 289.   School personnel have a duty to exercise reasonable supervision over students. Titus v. Lindberg, 49 N.J. 66 (1967).   Overall, the reasonableness standard addresses the primary question of whether considering the totality of the circumstances defendant's conduct comported with that of a reasonable educator in like circumstances.   Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 301 (2007).

To be liable for negligent hiring or retention, the employer must have known or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee, and could have reasonably foreseen that the qualities created a risk of harm to third persons.   D.T. v. Hunterdon Medical Center, 2012 WL 4448774 (N.J.Super. App. Div. 2012) (citing DiCosala v. Kay, 91 N.J. 159, 173-174 (1982)).   Further, in order for the Board, as a public entity, to be liable under the Tort Claims Act, plaintiff must establish that an injury was proximately caused by an act or omission of a public employee within the scope of his employment. N.J.S.A. 59:2-2(a).

There is not a single factual allegation in the complaint expressing the manner by which the school defendants allegedly deviated from a standard of reasonable care by employing Williams as a social worker.   Plaintiffs broadly allege defendants knew or should have known of Williams' unfitness and dangerous attributes and, thus, could have foreseen that he posed a risk

of harm to B.P.  However, there are no facts to support that prior to or during Williams'
employment he was unfit to be a teacher or that he posed a risk to students.  The only fact
presented is that in summer 2007, K.P. reported to Palatucci and Sullivan that Williams hosted
B.P. at his home; there are no facts of any particular complaints/reports raised about sexual abuse
by Williams, or of information reasonably available to the school defendants that was allegedly
overlooked, ignored, or concealed prior to the occurrence of any alleged sexual contact.  Simply
because a student visited a social worker/counselor's home does not make it reasonably
foreseeable that the teacher posed a risk of harm or would begin an exploitative relationship with
the student.  Further, contrary to the assertion, Williams' employment status did not provide him
with on-going access to B.P. after the 2006-2007 school year since B.P. attended Brookfield
Academy out of district.  Simply, plaintiffs have not pled any facts to support a claim for
negligent hiring, retention, or supervision.[11]

Similarly, plaintiffs have not pled any facts to show that a particular school defendant
acted, or failed to act, within the scope of their employment and that same proximately caused
injury to B.P.  Plaintiff claims that defendants breached their duty of care by taking inadequate
steps to prevent improper student-teacher relationships, including a failure to investigate and
discipline improper relationships when they came to light leading to Williams' sexual
harassment of B.P.  However, the facts reflect that the sexual harassment occurred prior to any
concern about an "improper" relationship being brought to Palatucci's and Sullivan's attention,

---

[11] The complaint asserts the Board could have foreseen that Palatucci and Sullivan would
inappropriately respond to allegations of an improper relationship and retaliate against those who
brought it light.  See complaint at ¶178.  However, the complaint is void of any facts to support
this conclusion but, rather, includes irrelevant facts regarding Palatucci's and Sullivan's
employment status subsequent to their employment with the Board.  See complaint at ¶¶179-181.

and the sexual harassment did not continue thereafter. Thus, any alleged failure to investigate the inappropriate relationship did not proximately cause the alleged injury.

The mere fact of an inappropriate and sexual exploitative relationship between a teacher and student is not sufficient to sustain any cause for action against the Board, Ross, Palatucci, or Sullivan. Under the totality of the circumstances, there are no facts pled that defendants' conduct failed to comport with that of a reasonable educator in like circumstances to make the school defendants liable for alleged negligence under any theory presented. Again, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice in defeating a Rule 12(b)(6) motion." Iqbal, supra, 556 U.S. at 688. Accordingly, the motion to dismiss must be granted as to these state law negligence claims.

**POINT V**

**COUNT VIII MUST BE DISMISSED AS PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND IT IS INSUFFICIENT TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6)**

In Count VIII plaintiffs purport to assert a claim for intentional infliction of emotional distress asserting that the school defendants acted intentionally or recklessly by facilitating, condoning, enabling, encouraging, and/or failing to respond adequately to the improper relationship between B.P. and Williams. See complaint at ¶199. Plaintiffs assert that as a result of this outrageous conduct, they suffered severe emotional distress. However, there is nothing contained within the complaint to support a claim for intentional infliction of emotional distress.

Plaintiffs' claims against the Board fail because there is no *respondeat superior* liability against public entities for intentional torts under the New Jersey Tort Claims Act, Title 59, N.J.S.A. 59:1-1, et seq. N.J.S.A. 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct.");

31

see also Ward v. Barnes, 545 F.Supp.2d 400, 420–421 (D.N.J. 2008) ("[T]here is no legal basis for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require "actual malicious or willful misconduct. Section 59:2–10 of the Tort Claims Act precludes entity liability for such conduct . . . .").  Thus, as a matter of law, Count VIII fails to state a claim upon which relief can be granted as to the Board and, therefore, must be dismissed.

The allegations against the individual school defendants must also be dismissed because plaintiffs have failed to plead any facts to sustain a claim for intentional infliction of emotional distress.  To prevail on such claim, plaintiffs "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckeley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).  It is a question of law as to whether intentional infliction of emotional distress can be found. Id. at 367.  Similar to the preceding counts, plaintiffs have failed to assert any specific factual allegations to support a claim for intentional infliction of emotional distress.  The assertions constitute mere conclusory statements and various "buzz words" in an effort to mimic the elements of the cause of action.

As previously detailed, there is not one fact pled as to any conduct of Ross.  With respect to Palatucci and Sullivan, plaintiffs simply allege that they failed to adequately investigate an inappropriate relationship and text messages between Williams and B.P., and they failed to supervise Williams after they learned of K.P.'s "concerns" of an inappropriate relationship.  Even considering these general assertions, such conduct as pled is not so outrageous in character and so extreme to go beyond the bounds of decency.  Additionally, the facts do not show proximate cause because the alleged sexually exploitative conduct towards B.P. did not continue after the alleged failures to investigate and supervise took place.  Finally, there is not one fact

pled that K.P. can rely upon to support an individual claim for intentional infliction of emotional distress. Thus, Count VIII fails to state a claim as to the Board, Ross, Palatucci, and Sullivan and must be dismissed.

## POINT VI

**PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED AS NO CLAIM FOR PUNITIVE DAMAGES CAN SURVIVE A 12(b)(6) MOTION TO DISMISS**

In each of the prayers for relief, plaintiffs seek punitive damages against the school defendants. However, local governments are immune from punitive damages as a matter of law under federal law. City of Newport v. Fact Concerts, 453 U.S. 247 (1981). Moreover, punitive damages do not lie against a board of education under Title 59, N.J.S.A. 59:9-2(c). Bernstein v. State, 411 N.J.Super. 316, 329 (App.Div. 2010); Marion v. Bor. of Manasquan, 231 N.J.Super. 320, 323 (App.Div. 1989). Further, the public entity has immunity from punitive damages because it cannot have vicarious liability for any possible willful misconduct of its employees. N.J.S.A. 59:2-10. Accordingly, under the plain language of the statute, plaintiffs are not entitled to punitive damages from the Board.

Defendants acknowledge that punitive damages may be permitted against a public entity for the LAD claims. However, punitive damages are only permitted if upper management actually participated in or was willfully indifferent to the wrongful conduct and the offending conduct is especially egregious. Cavuoti v. N.J. Transit Corp., 161 N.J. 107 (1999). In this case, plaintiffs have not pled any facts to indicate that Superintendent Ross or the Board which could be considered "upper management," actively participated in egregious wrongful conduct or was willfully indifferent to the alleged sexual harassment of B.P., particularly since they had no knowledge of the sexual harassment, they confronted Williams about the text messages, and B.P. has no contact with Williams after the inappropriate relationship was reported as B.P. was sent to

33

Brookfield Academy for his senior year of high school.  Just as Ross' and Palatucci's conduct does not rise to the level of willful indifference, it is axiomatic that their conduct does not meet the LAD "especially egregious" standard to impose liability for punitive damages upon the Board.

Public employees such as Ross, Palatucci, and Sullivan can, however, be subject to punitive damages under the Tort Claims Act only if it is established that their conduct constituted a crime, actual malice or willful misconduct.  N.J.S.A. 59:3-14;  See Thorpe v. Cohen, 258 N.J.Super. 523, 531 (App.Div. 1992); Hayes v. Pittsgrove Twp. Bd. of Educ., 269 N.J.Super. 449 (App.Div. 1994).  Within the context of the Tort Claims Act, willful misconduct has been defined as the "commission of a forbidden act with actual knowledge that the act is forbidden." Bernstein, 411 N.J.Super. at 323 (citing Kollar v. Lozier, 286 N.J.Super. 462, 470 (App.Div.), certif. denied, 145 N.J. 373 (1996)).  Willful misconduct is much more egregious than ordinary negligence.  Id.  Further, "carelessness, unreasonable conduct, or even noncompliance with substantive law" is simply not enough to invoke liability upon the employees under the Act.  Van Engelen v. O'Leary, 323 N.J. Super. 141, 154 (App.Div.), certif. denied, 162 N.J. 486 (1999). Clearly, the complaint fails to set forth any factual basis against the individual school defendants that would in any fashion come near this standard.  As such, plaintiffs' prayers for punitive damages must be dismissed.

## POINT VII

### AS PLAINTIFFS WERE NOT MINORS WHEN THE COMPLAINT WAS FILED, THE PLEADINGS SHOULD REFLECT THEIR FULL NAMES

Pursuant to the Federal Rules of Civil Procedure, any action that is brought must be prosecuted in the name of the real party in interest.  F.R.C.P. 17(a)(1).  It is only in actions brought on behalf of minors that the interested party may identify themselves by his or her

initials. F.R.C.P. 5.2(a) (3); See Electronic Case Filing Policies and Procedures, Comment 17(3) to Local Civil Rule 5.2. Here, plaintiffs were not minors when they filed their complaint; yet, they failed to file using their full names but, rather, used their initials, which is improper.

Although the complaint does not include plaintiffs' dates of birth, the facts contained within the complaint clearly reflect that plaintiffs are over the age of 18. With respect to B.P., the complaint indicates that he graduated from high school in 2008, id. at ¶78, which the court can take judicial notice that B.P. would have been at least 17 years old at that time. The complaint further indicates that K.P. is B.P.'s mother, id. at ¶2, and, thus, she is clearly over the age of 18. Neither B.P. nor K.P. were minors at the time they filed their complaint on August 29, 2014. Thus, plaintiffs, as the real parties in interest in this action, must prosecute this case under their real names.

## CONCLUSION

For the foregoing reasons, defendants Black Horse Pike Regional School District, Ralph Ross, Frank Palatucci, and Thomas Sullivan respectfully request that the complaint against them be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for its failure to state a cause for action upon which relief may be granted.

HILL WALLACK LLP
202 Carnegie Center
Princeton, NJ 08543-5226
Attorneys for Defendants, Black Horse Pike
Regional School District, Ralph Ross, Frank
Palatucci, and Thomas Sullivan


By:/s/ Jeffrey L. Shanaberger
    Jeffrey L. Shanaberger, Esq.

Dated: November 21, 2014

# EXHIBIT A

| Student Name | | | | |
|---|---|---|---|---|

BLACK HORSE PIKE
REGIONAL SCHOOL DISTRICT

HIGHLAND REGIONAL HIGH SCHOOL
450 ERIAL RD
BLACKWOOD, NJ 08012
Tel: 856-227-4100    Fax: 227-3619
School Alternate Number: 020
Counselor: Nau, Tim

| Student ID | Grade | Gender |
|---|---|---|
| 293313 | 12 | M |

| Birth Place | Date Of Birth | Ethnic Code |
|---|---|---|
| BALTIMORE, M | 10/16/90 | |

Enter Date: 09/01/04
Graduated: 06/19/08
Class Of: 2008

Parent Guardian
MS K████ P████████
1644 LAWNCREST LANE
LAUREL SPRINGS, NJ 08021
856-435-4119

State ID: 9962905234

| Crs ID | Course Title | Mark Ab | Credit | GPA Summary |
|---|---|---|---|---|
| Highland Regional High School Grd 09 6/2005 | | | | Weighted GPA: 1.5595   Class rank is 270 of 290 |
| 000100 | Phys. Ed. 1 | 39 | 0.000 | Unweighted GPA: 1.5595 |
| 000103 | Health 9 Q3 | 49 | 0.000 | |
| 011500 | Eng 1 | 71 | 5.000 | |
| 021500 | Wld His/Cul | 72 | 5.000 | Total Credits Attempted: 107.500 |
| 031700 | Math 1 | 75 | 5.000 | Total Credits Earned: 86.250 |
| 041500 | Conc Nat Sci | 69 | 5.000 | |
| 071100 | Art 1 | 77 | 5.000 | |
| Crd Att: 30.000  Cmp: 25.000  WTD: 1.5000 | | | | |
| | | | | |
| Highland Regional High School Grd 10 6/2006 | | | | |
| 000200 | Phys. Ed. 2 | 72 | 3.750 | |
| 000201 | Health 10 Q1 | 82 | 1.250 | |
| 012500 | Eng 2 | 72 | 5.000 | |
| 022500 | US Hist 1 | 68 | 5.000 | |
| 031300 | Algebra 1 | 54 | 0.000 | |
| 042100 | Con Phys Sci | 39 | 0.000 | |
| 054700 | Basic Span 1 | 58 | 0.000 | |
| Crd Att: 30.000  Cmp: 15.000  WTD: 0.8750 | | | | |
| | | | | |
| Summer School Grd 10 6/2006 | | | | |
| 031300 | Algebra 1 | 75 | 5.000 | |
| 054700 | Basic Span 1 | 83 | 5.000 | |
| Crd Att: 10.000  Cmp: 10.000  WTD: 2.5000 | | | | |
| | | | | |
| Highland Regional High School Grd 11 6/2007 | | | | |
| 000300 | Phys. Ed. 3 | 78 | 3.750 | |
| 000303 | Health 11 Q3 | 31 | 0.000 | |
| 013500 | Eng 3 | 74 | 5.000 | |
| 023500 | US Hist 2 | 75 | 5.000 | |
| 033700 | Math 3 | 82 | 5.000 | |
| 042100 | Con Phys Sci | 69 | 5.000 | |
| 098000 | Dightl. Video Pro | 76 | 5.000 | |
| 119010 | SS Enhan A | P | 2.500 | |
| Crd Att: 32.500  Cmp: 31.250  WTD: 1.9167 | | | | |
| | | | | |
| Summer School Grd 11 6/2007 | | | | |
| 000100 | Phys. Ed. 1 | 79 | 3.750 | |
| 000303 | Health 11 Q3 | 74 | 1.250 | |
| Crd Att: 5.000  Cmp: 5.000  WTD: 2.0000 | | | | |

Grading Scale: 90-100=A 80-89=B 70-79=C 65-69=D Below 65=F *=No Credit

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTP or DT/TD | 12/21/90 | 02/19/91 | 04/23/91 | 04/27/92 | 11/21/94 | ------- | ------- |
| Polio | 12/21/90 | 02/10/91 | 04/27/92 | 11/02/94 | ------- | ------- | |
| MMR | 04/09/92 | 11/02/94 | | | | | |
| Measles | ------- | ------- | ------- | | | | |
| Rubella | ------- | ------- | | | | | |
| Mumps | ------- | ------- | | | | | |
| HIB Meningitis | 12/21/90 | 02/19/91 | 04/23/91 | 04/09/95 | | | |
| Hepatitis B | 12/04/98 | 01/28/99 | 08/31/00 | | | | |
| Mantoux | ------- | ------- | | | | | |
| Varicella | ------- | ------- | | | | | |
| TB Test | ------- | ------- | | | | | |

Transcript is unofficial unless signed by a school official

Joseph Miloszewski            Guidance Counselor            _____  Date: 07/01/08